---

### In re MANHEIM.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

ATTORNEY—PROFESSIONAL MISCONDUCT—PUNISHMENT.

> Where an attorney, after the defeat of his client in a case tried in a city court, wrote a letter to the justice who tried the case complaining of his conduct, reflecting on the integrity of the justice, and by inference on that of other members of the court, but, on being called to account therefor by the Appellate Division, asserted that the letter was writen on an impulse, without any intention of giving publicity to his grievance or doing more than expressing his feelings to the justice, the act, while highly objectionable, was not ground for the imposition of a greater punishment than a reprimand.

Proceedings for the punishment of Jacob Manheim, an attorney at law, on charges of professional misconduct. Dismissed.

Argued before McLAUGHLIN, INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Egerton L. Winthrop, Jr., for petition.
Jacob Manheim (Austen G. Fox, on the brief), in pro. per.

INGRAHAM, J. The respondent, an attorney and counsellor at law, was counsel in a case in the city Court of New York. That case came on for trial before one of the justices of that court, and resulted in the defeat of the respondent's client. Subsequently the respondent wrote a letter to the justice, complaining of his conduct, and containing reflections upon the integrity of the justice, and, by inference, of other members of the court. The justices of the court served a notice upon the respondent to appear before them and explain his conduct. He offered to them no explanation, but acquiesced in a reference of the matter to this court. The respondent was heard personally, and submitted an affidavit and brief. In his affidavit he disclaims malice, or intention to injure either the court or its justices, stating that feeling deeply what he considered to be an injustice that he had sustained in consequence of the

action of the justice to whom the letter was written, and on the impulse of the moment, he wrote the letter, that he considered it a mere private letter to the justice, and that no publicity was given to it, submitting that this is not a matter calling for action on the part of the court.

The admission of attorneys is regulated by the Code of Civil Procedure. Section 55 provides for the examination and admission of attorneys, section 59 provides that each person admitted must upon his admission take the constitutional oath of office in open court, and subscribe the same in a roll or book to be kept in the office of the clerk of the Appellate Division of the Supreme Court for that purpose, and section 67 provides that:

"An attorney and counsellor, who is guilty of any deceit, malpractice, crime or misdemeanor, or who is guilty of any fraud or deceit in proceedings by which he was admitted to practice as an attorney and counsellor of the courts of record of this state, may be suspended from practice, or removed from office, by the Appellate Division of the Supreme Court."

The following sections also apply to various acts of an attorney which are made misdemeanors and for which an attorney may be disbarred.

An attorney and counsellor at law, when admitted to practice, becomes an officer of the court, and, as such, is a public officer, bound to exercise the utmost good faith to his clients and to the court. In view of the conclusion at which we have arrived in the disposition of this proceeding, it is not necessary to determine just what conduct towards the court we consider deceit or malpractice within the provisions of section 67 of the Code, or whether the respondent has been guilty of such conduct as would justify the court in suspending him from practice or removing him from office. The Constitution and laws of the state provide for the removal of judges whose conduct has disqualified them from holding the office to which they have been elected or appointed; and it is the duty of every attorney, or other citizen who has knowledge of any act which would justify such a removal, to present the facts to those who have the power of removal in order that the proper action may be taken, when the charges can be properly investigated and the officer afforded an opportunity to be heard in his defense, but it certainly cannot aid in the administration of justice to have attorneys of the court charge judges with favoritism or improper conduct under circumstances which prevent the judge charged from being heard in his own defense. Such charges seem to be based upon an impression that cases are decided, or judicial actions are controlled, by favoritism or prejudice for or against particular attorneys or clients, a condition which, if it existed, would be inconsistent with any proper system of administration of justice. We think that the method adopted by the respondent should be severely condemned as eminently improper and inconsistent with the relations that must exist between the members of the bar and the judicial officers who are charged with the duties of administering justice; but, as the respondent asserts that this letter was written upon an impulse and there was no intention of giving publicity to his grievance, or doing more than expressing to the justice his feelings, and while we cannot condemn too severely the act of the respondent, we do not feel that the circumstances disclosed call upon us

to take any further action than to express our condemnation and publicly reprimand the attorney for the course that he has pursued.

With this expression of our views, the proceeding will be dismissed.

McLAUGHLIN, CLARKE, and HOUGHTON, JJ., concur.

LAUGHLIN, J. If this were merely a private letter to a judge out of court censuring his judicial conduct, or giving expression to the opinion of the author concerning the judge individually or as an official, an interesting question relating to our jurisdiction would be presented, upon which it is not necessary that an opinion should now be expressed. The letter, however, goes much further, and reflects upon other judges and the courts presided over by them. The conduct of the attorney is very reprehensible, and if permitted to pass with a mere reprimand others will be encouraged to ventilate their private, and perhaps malicious, views concerning the courts and judges, and in the end the reputation of the courts and judges for probity and impartiality may be destroyed and the public may lose confidence in the judiciary, than which nothing could be more deplorable. If Manheim was justified in entertaining and expressing the views uttered in the letter, then the judge to whom it was addressed, and the other judges designated therein by exclusion, were wholly unfit to hold judicial office, and he would have been justified in preferring charges for their removal. That was the orderly, decent, and fair course to pursue. A judge cannot, with propriety, defend himself against attacks by members of the bar, made through the press or by letters, because to do so would be to depart from all the wise traditions of the bench. If members of the bar are to be permitted to impugn the integrity and impartiality of the bench without just cause, and without subjecting themselves to discipline by the court which admitted them to practice and is vested with the power of suspension and removal of attorneys, how long will the laymen, who assume that the attorneys are in a position to know the facts in such cases, retain that confidence in the bench which is essential to its usefulness? If a member of the bar has knowledge of facts indicating unfairness or impartiality or corruption on the part of a judicial officer, high or low, I think the course he should pursue, and it is his privilege if not his duty so to do, is to prefer charges with the proper officer or body having the power of removal, and to oppose the re-election or reappointment of the judge.

I am therefore of opinion that this attorney should be required publicly to apologize in open court to the judges criticised and report publicly to this court that he has done so; and that, in default of so doing, he should be suspended from the practice of the legal profession for the period of six months.