In the Matter of Proceedings to Disbar LYMAN H. BEVANS, Attorney, of the City of Albany, County of Albany, and State of New York, Respondent.

Third Department, March 20, 1929.

*Urbane C. Lyons*, for the petitioner.

*Humboldt M. Schlesinger*, for the respondent.

PER CURIAM. In brief, the charges presented against respondent are: That he made, published and circulated false, vicious and libelous charges against two justices of the Supreme Court; that these acts were malicious; and that they constituted professional misconduct prejudicial to the administration of justice, and make manifest the unfitness of the respondent to act as an officer of the court in the capacity of attorney and counselor at law.

The particular charge as limited by this court (See 222 App. Div. 701) arose in an action brought in January, 1925, by the respondent as attorney in person against the district attorney of Albany county, the foreman of the grand jury at a regular term of the Supreme Court in March, 1924, the then mayor of the city

of Albany, the justice of the Supreme Court presiding at the March term, and a savings bank in Albany.

The complaint alleged in lurid language that a conspiracy existed amongst political leaders in both major parties in Albany " and many gamblers, crooks, criminals and ex-convicts " to commit many crimes and to influence public officials, both executive and judicial, to permit violations of the law; to prevent investigation and prosecution of these crimes; to protect the criminals; and " to prosecute, intimidate, slander, libel and ruin in their business and reputation, any person or persons who seek or sought to interfere with, inform against or prosecute such violators." The defendants were each charged with knowledge of such conspiracy and with being members of it and all were doing what they could in official position and with their business connections as well as in their individual capacities to further the conspiracy.

The grievance of the plaintiff in that action was, as he claims, that at a term of the Supreme Court in Albany county, he presented to the justice presiding an affidavit charging misconduct on the part of a grand juror and of a witness before the grand jury, and requested that the charge be investigated in open court. But the justice " in furtherance of said conspiracy refused plaintiff's request; " and as a part of the general conspiracy gave the affidavit to the district attorney, and the facts alleged therein were investigated by the grand jury in relation to the perjury of the plaintiff. All of this, it is alleged, was done in furtherance of the conspiracy to prevent the indictment of one Maloy charged with gambling, and for the purpose of intimidating plaintiff, of injuring him in his standing in the community, and for protecting violators of the law. The plaintiff claimed to be injured by these acts, and damages were demanded. The complaint was unverified, although the allegations therein were made positively — none being on information and belief.

The defendants served answers denying the charges of conspiracy; and a motion was made to compel plaintiff to furnish a bill of particulars. On this motion returnable before a regular Special Term, the plaintiff appeared and first made objection to having the matter heard before the justice presiding, on the ground that he was disqualified. In support of his objection, he submitted his own affidavit charging in language almost as intemperate as that used in the complaint that the justice was a member of the conspiracy " and a party to the agreement and understanding set up in the complaint herein " and would be a necessary witness on the trial to establish the existence of the conspiracy.

The order to furnish a bill of particulars was granted and even-

tually such bill was served by plaintiff reiterating the charges of conspiracy and giving the names of many persons of prominence including other judicial officers who were named as members of the conspiracy. Later upon stipulation the action was discontinued, without costs. During the pendency of the action the respondent caused to be printed and mailed to members of the bar and others throughout the judicial district and elsewhere, circulars containing scandalous matter in the form of telegrams and letters and other matter he had sent to the justice whom he had joined as a party defendant. Some of these were sent to the neighbors and friends of this defendant. In his affidavits used on motions in this and other similar actions, the respondent invariably made the most scandalous charges against the parties and many others not parties, which were entirely irrelevant to the matter under consideration. That such methods of practice would be followed by a member of the bar would be almost unbelievable were not the papers actually before us. It indicates the state of mind of the respondent and purposes of malice.

The facts above stated were brought to the attention of this court and a prosecutor was appointed and formal charges filed. The matter was referred to an official referee to take evidence and report on the issue as to whether or not the respondent had reasonable grounds to institute the action. The hearing has been had and the report is now before us. The findings are that the allegations and charges so made by the respondent against the justices named " are and were wholly and utterly false and untrue." It is further found that the respondent " had and has no reasonable or just grounds to believe the said charges so made * * * to be true and no evidence was given on the hearing * * * of mitigating circumstances to excuse the making of such allegations and charges."

We have examined the complete record with more than usual care and are satisfied that the findings of the referee are fully sustained. We stated before the hearing began that " No defendant in that action because of official position is immune from litigation nor exposure of any wrongful act. On the other hand, no attorney is justified in bringing an action against any person or group of persons without reasonable grounds therefor, particularly an action in which the complaint charges such reprehensible conduct as did the complaint in said action. The question of fact then is whether the respondent had reasonable grounds to institute said action for conspiracy." (Matter of Bevans, 222 App. Div. 701.)

The respondent knew before the hearing began what issue he must meet. He made no attempt to establish either that he had a cause of action against the justice of the Supreme Court whom he

had named as defendant, or that at the time of bringing it he had reasonable grounds to suppose that a conspiracy in fact existed with which the judicial officers named by him were connected. Instead, he attempted to make proof of the long existence of " baseball pools," gambling and other crimes in the city of Albany and elsewhere; and that many men including attorneys and certain public officials were either connected with said enterprises or acquiesced in their being carried on. It seems that he had been engaged in commencing proceedings against alleged violators, and that his efforts, not well directed or conducted with legal skill, had often been thwarted. What motivated him in his crusade against crime is not clear; but his methods were generally the same. They consisted in making wild charges which he was unable to support by evidence, followed by vicious and intemperate attacks on all persons he thought were opposed to him or who declined to engage in the crusade with him. On the hearing in these proceedings, the respondent insisted that the prosecutor, regardless of the purpose of his appointment, should make investigation into crime, criminal activities and conspiracies, and undertake the prosecution of crime in Albany county and elsewhere. When the prosecutor declined to abandon the duty at hand, the respondent proceeded to abuse him and charge him with being a criminal and a member of the conspiracy, and continued so to do at intervals during the entire hearing. Witnesses on the stand were urged to go with respondent before some magistrate or the Governor to engage in making complaints sponsored by respondent. We mention these matters as illustrative of the state of mind of the respondent, and his lack of a sense of propriety, courtesy and ordinary standards of conduct.

If such a conspiracy as he charges did in fact exist, it would, of course, be in no sense material on this hearing, unless he could establish that the judicial officers named were acting either as a part of it or in concert with it. Although it was suggested by the learned official referee that the respondent take the stand and explain the charges made in the action and what led him to bring it and give any information that he had showing reasonable grounds for making the charge which might mitigate the offense, the respondent declined to be sworn on grounds that are, to say the least, fantastic. We are at a loss now to understand whether he still insists that the charges were true, for his attitude has been equivocal throughout. He seems neither to affirm nor to disaffirm the truth of the charges made. He does not express satisfaction or regret at having made them. He seems to take the position (although we confess it difficult to fathom his argument) that if a conspiracy existed, and these judicial officers without knowledge of its exist-

ence, by any official act of theirs did something that in some way was of advantage to the conspirators, then by reason of such act they became a part of the conspiracy. Perhaps the most charitable view to take of the respondent's acts would be to say that by reason of his crusader's zeal he has a disordered and unbalanced mind and has no true conception of legal principles, ethics or standards of duty.

Judicial officers, as we have said, are not immune from suit or criticism; but, like every one else, they are protected against scandalous charges. To make a public, false and malicious attack on a judicial officer is more than an offense against him individually; it is an offense against the dignity and integrity of the courts and of our judicial system. It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the court. In this and in other jurisdictions, the rule is well settled that an attorney who engages in making false, scandalous or other improper attacks upon a judicial officer is subject to discipline. (*Matter of Manheim*, 113 App. Div. 136; *Matter of Rockmore*, 127 id. 499; *Matter of Carrao*, 170 id. 545; *Matter of Murray*, 11 N. Y. Supp. 336; 58 Hun, 604; *Bradley* v. *Fisher*, 13 Wall. 335, 355; *Cobb* v. *United States*, 172 Fed. 641; *Thatcher* v. *United States*, 212 id. 801; *Matter of Mains*, 121 Mich. 603.)

The respondent can gain no immunity or privilege by inserting such matter in a pleading where he fails to establish its truth on a trial or by other means. One may not make use of legal proceedings in bad faith as a cloak to scandalous utterances. (*Dada* v. *Piper*, 41 Hun, 254, 256.)

A man guilty of such practices as are here considered is dangerous in any walk of life and is especially so when he occupies the responsible position of an attorney upon whose good faith, truthfulness, sense of propriety and ethical standards both courts and litigants are entitled to rely. (*Matter of Hawes*, 169 App. Div. 644, 648; affd., 217 N. Y. 602.) The acts and the attitude of the respondent are clearly indicative of professional misconduct and illustrative of a mind barren of conceptions of ethics. The conclusion follows that he is unfit to engage further in the practice of law until he has an awakened sense of the duties and responsibilities of his office as attorney and counselor at law.

The respondent should be suspended from the practice for the period of one year, and for such further period until he shall have made application for reinstatement, showing contrition for his misdeeds, and his purpose to practice according to the standards generally recognized by the profession; and upon showing compli-

ance with the conditions to be recited in the order to be entered hereon; and shall have been thereupon reinstated.

VAN KIRK, P. J., DAVIS, WHITMYER, HILL and HASBROUCK, JJ., concur.

The respondent, Lyman H. Bevans, is suspended from practice as attorney and counselor at law for the period of one year from the date of the entry and service of a certified copy of the order to be entered herein, and for such further period until he shall have made application for reinstatement, showing contrition for his misdeeds, and his purpose to practice according to the standards generally recognized by the profession; and upon showing compliance with the conditions to be recited in the order to be entered herein; and shall have been thereupon reinstated. And the said respondent, Lyman H. Bevans, is hereby commanded, during said period of one year and until reinstated, to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another, and is hereby forbidden, during said period of one year, and until reinstated, to perform any of the following acts for compensation or reward, to wit: (1) To appear as an attorney or counselor at law before any court, justice, judge, board, commission or other public authority; (2) to give to another an opinion as to the law or its application or any advice in relation thereto.

The court approves of the findings and conclusions of the referee herein, and finds that the respondent, Lyman H. Bevans, is guilty of professional misconduct and conduct prejudicial to the administration of justice.