**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Harlan E. GRIMES, Respondent.**

**S.C.B.D. No. 1794.**

Supreme Court of Oklahoma.

March 8, 1960.

Floyd Rheam, Claude H. Rosenstein and J. C. Denton, Jr., all of Tulsa, for complainant.

Harlan E. Grimes, in pro. per., respondmended.

PER CURIAM.

The respondent was admitted to the Bar of Oklahoma on the 28th day of November, 1928. In June, 1959, under appropriate rules, complaint was lodged against respondent for numerous acts of alleged misconduct in violation of his oath and duty as a member of the Bar. Pursuant to the rules, Honorable Andrew Wilcoxen, a former District Judge of Oklahoma, was appointed as Trial Examiner to hear such charges and to make findings of fact and conclusions of law thereon.

Following due and orderly hearing on August 18, 1959, such Trial Examiner thereafter returned findings of fact and conclusions of law and his recommendation that the respondent be disbarred.

Upon consideration thereof, and on October 15, 1959, the Executive Council of the Oklahoma Bar Association considered the trial record and the aforesaid report of the Trial Examiner and adopted its findings and recommendation for disbarment.

We have before us the record of the hearing before the Trial Examiner, his report above mentioned, and the report, findings and recommendation of the Executive Council of the Oklahoma Bar Association.

Appropriate rules provide that when charges are properly presented against a member of the bar he may in the first instance have a private hearing or may request a public hearing.

Upon filing of these charges respondent, Harlan E. Grimes, requested of the Trial Examiner a public hearing, which was granted, and he was duly notified of the time and place of hearing. Respondent failed to appear, whereupon the Trial Examiner talked with him by telephone. Respondent then advised that he would not attend the hearing, and that he had forwarded by mail his written resignation withdrawing from membership in the Oklahoma Bar. The Trial Examiner ascertained that such written resignation had not been received by the Oklahoma Bar Association, and in keeping with the rules proceeded to hear the evidence and examine the numerous documents introduced in evidence. Up to October, 1959, when the Trial Examiner finalized his written report no resignation from respondent had yet been received by the Oklahoma Bar Association.

Appropriate rules provide that when such a report with findings and recommendation for disciplinary action are filed in this court that notice thereof shall be given to the respondent, and he shall have time up to sixty (60) days, or extended time on request, to respond to such recommendation and oppose the same, with adequate time to file brief and/or make appearance in opposition to the disciplinary action recommended.

This complete record with the reports, findings and recommendations were filed in this court on October 28, 1959, with due notice at that time given to the respondent, Harlan E. Grimes.

Four months have expired and respondent has made no effort in any manner to appear herein or to in any manner resist or object to the findings and conclusions and recommendations made against him, and from this fact, together with the fact of his failure to appear before the Trial Examiner, we assume he has fully waived any desire or right to appear herein.

The record shows that for a number of years the respondent has followed a course of uttering, writing, printing and circulating evil and ungrounded attacks upon various lawyers, judges and Justices of courts with evident intent both to injure such persons and officials in public standing and respect, and in an effort to browbeat and coerce them into acceding to his unwholesome, private, selfish wishes in certain litigation, and specifically in one cause hereafter mentioned.

The animosity, ill will and malevolence against some attorneys at law and certain members of the Supreme Court sprang from his loss of his case by the Supreme Court decision in State ex rel. Grimes v. Board of Education, decided January 30, 1940, first petition for rehearing considered and denied February 20, 1940; second petition for rehearing considered and denied and final mandate issued March 12, 1940, reported 186 Okl. 665, 99 P.2d 876. In that case the trial court had sustained a demurrer to plaintiff's petition on "the ground, among others, that the petition failed to state a cause of action against any of the defendants." On appeal the Supreme Court affirmed. That was an action in the nature of a taxpayer's suit against the Board of Education of Oklahoma City and others, including the National Surety Corporation and New Amsterdam Casualty Company, to recover $100,000 of public money alleged to have been illegally spent by the Board of Education, plus an additional $100,000 for

plaintiff as an informer's fee. This decision was evidently regarded by Mr. Grimes as a large financial loss.

Some time in 1948 respondent Grimes seemed to have concluded that the aforesaid decision in 1940 was corrupt and that it was the result of a bribe of $20,000, divided among the seven Justices who concurred in the majority opinion in the Supreme Court.

During several years beginning in 1948 respondent wrote letters to the current Chief Justices of the Supreme Court of Oklahoma, enlarging upon his bribery accusations and making repeated requests for a hearing. When such requests were universally granted respondent would decline to attend, or merely fail to appear, but nevertheless persisting in his course of conduct. About 1949 respondent prepared and printed an eleven page pamphlet, captioned "The Secret Bribe of $20,000.00," and filled with accusations against prominent lawyers and active jurists, all of high standing, as to the giving and accepting of this alleged bribe. This pamphlet respondent widely circulated to members of several Legislative Sessions, to at least three Governors of Oklahoma, and to one or more County Attorneys of Oklahoma. When investigations were made and respondent would be advised as to the futility thereof he would have nothing tangible to produce, but would continue to persist in his course of conduct. Copies of such pamphlet were sent to various members of the public and to newspapers and to at least one National Magazine, but it is interesting to observe that such pamphlet was not reproduced in any of them.

In 1952 respondent sought to have such pamphlet in large numbers used in a political campaign in which one of the members of the Supreme Court was a candidate for reelection, but such offer was refused and rebuffed. In 1956 in another such political campaign respondent made large circulation of copies of such pamphlet, together with a letter enlarging upon his groundless accusations, which documents went to a large number of lawyers, newspapers and citizens, but seemingly with little or no effect upon the result of the election.

In 1955 respondent filed a so-called action in the Supreme Court of the United States, State ex rel. Grimes v. Board of Education, 349 U.S. 903, 75 S.Ct. 580, 99 L.Ed. 1240. In this action there are named as respondents The Board of Education of Oklahoma City, numerous individuals who had served on said Board, and the Surety Companies named in the reported case—186 Okl. 665, 99 P.2d 876. Also numerous present and past members of the Supreme Court of Oklahoma. The petition in said suit repeated all of respondent's former utterances as to bribery in the 1940 decision of the Supreme Court of Oklahoma, and alleged various acts of respondent himself in circulating his charges and accusations, pointing out that he had furnished full information to Federal Officials and members of Congress, and this action sought to have the Supreme Court of the United States to either suspend from office certain members of the Supreme Court of Oklahoma, or to compel them to vacate the judgment rendered in 1940 in the reported case—186 Okl. 665, 99 P.2d 876. A few months after that action was filed a motion to dismiss same was sustained.

In the latter part of 1956, or early 1957, a dispute in reference to an oil drilling project arose in Texas between Harlan E. Grimes on one side, and on the other his brother Russell Grimes, and others, which resulted in a law suit filed against them by Harlan E. Grimes in State Court in Texas. This suit was decided for the defendants by Judge Johnston, District Judge of Crockett, Texas, and on appeal that ruling was affirmed by the Court of Civil Appeals in Galveston, and on further appeal was affirmed in the Supreme Court of Texas. In late August, 1957, Harlan E. Grimes filed a suit in the Federal District Court for the Eastern District of Texas, for over $2,000,000 against twenty-four defendants which included trial judges and Court of Civil Appeal judges, and Justices of the Supreme Court of Texas. This suit charged generally that all of the Judges

were corrupt and that they all conspired together to render and finalize this judgment against Harlan E. Grimes. That case was later dismissed by Harlan E. Grimes mailing in a dismissal thereof.

Early in 1959, and in connection with his preparation of a suit which was later filed, the respondent Grimes talked with some members of the Supreme Court of Oklahoma, and sought permission to see their income tax returns, with the statement that he was about to file a suit on his contentions of bribery, and that if the particular Justices' tax returns showed only legitimate income that he would not include them in the suit he intended to file. They made available to him their returns, and although he concededly found no irregularities whatever in any of their incomes, nevertheless he included them and filed such suit in the United States District Court for the Western District in Oklahoma City, against various members of the Supreme Court, and prominent members of the Bar, alleging the giving and taking of bribe money.

It was in the deposition of respondent Grimes taken in that action in which he admitted a great many of the specific acts of misconduct heretofore referred to, and that deposition is in our record here.

Several weeks after that suit was filed a motion to dismiss it was sustained, with some pointed remarks from the Bench as to the duty of the Oklahoma Bar Association to investigate the conduct of the respondent, Harlan E. Grimes, and soon thereafter such investigation resulted in the proceedings now before us.

In the deposition above referred to and in many letters above referred to the respondent made some challenge of a disbarment action, yet as above stated, he failed to appear at the hearing before the Trial Examiner, and has wholly failed to present any appearance here.

It is our duty to consider the record and findings and recommendation. We have done that and we find the recommendation and findings of fact to be thoroughly justified by the proof presented.

We cannot refer to any former decision of this court as being in point because such a circumstance as this has not heretofore arisen in this State, and very rarely in any other State. There was one case in New York.

In that State in 1942 Richard A. Knight was disbarred for misconduct very similar to that here involved in that he circulated unfounded charges of dishonesty and corruption against various Justices and Judges and Lawyers. The language of that decision is so very applicable that we now quote extensively from it. In the Matter of Knight, 264 App.Div. 106, at page 110 et seq., 34 N.Y.S.2d 810, at page 813.

" * * * He charged a court with 'shameless and contumacious dishonesty' and 'indecent behavior.' He asserted that certain judges had turned their backs upon common honesty and their sworn duty. Referring to two judges he said: 'For a year and a half, I have been denouncing these two low, skulking rogues from the house tops and to date neither of them has had the guts even to cite me.'

"The foregoing excerpts are a few samples of the abuse which the respondent has heaped upon judicial officers who have fearlessly performed their judicial duties and refused to be intimidated or coerced by him. The letters and affidavits referred to were deliberately widely publicized by the respondent, undoubtedly at considerable effort and expense to him. No useful purpose would be served by further publication of his statements. The imputation of corruption and dishonesty renders it impossible for the most openminded individual to characterize the vituperative attacks as fair criticism of the courts. The theme of all of his publications is a scandalizing of the courts in an attempt to bring them into public disrepute.

"It is of course, the duty of citizens, and especially members of the Bar, to seek the removal from office of any

judicial officer guilty of dishonesty or corruption. The charges made by the respondent against the judicial officers indicated would, if established, justify impeachment and removal from office of the persons named. The respondent is aware of the appropriate forum for such a proceeding. The means he has resorted to are an attempt to undermine judicial respect and the reputation of the courts and judges and are most unprofessional, being a violation of the first canon of the Canons of Professional Ethics, which covers the duty of a lawyer to the courts.

"In Matter of Murray, 58 Hun 604, opinion published 11 N.Y.S. 336, where somewhat similar facts were before the court, it was said: '* * * This conduct is unprecedented and unprofessional. The charges are most serious in character, and would be attended with the gravest results if established. They should not therefore be entertained for a moment, except upon the most impressive evidence at least, and then only in the manner provided by law for the investigation of kindred accusations against judicial officers. These results impose the greatest and most scrupulous care even in an attempted impeachment of a judicial officer, and if a counselor of this court, disregarding that mode of procedure, makes the charge of corruption against an officer in his own court, while sitting in a case which he is investigating, his conduct is in the highest degree unprofessional and improper. If such a performance should be tolerated, when every presumption of law is against the truth of the accusation, the honor of judicial officers would be exposed to the malice or rage of disappointed attorneys whose evil inclinations, anger, or passion would thus seek its gratification. Unfortunately, perhaps, there are in our profession a few who chafe under an adverse decision, and indulge in utterances which they are only too happy to retract in cooler moments;

and this class are unfortunate, it may be, in having adopted a profession which has its successes and failures, the latter arising doubtless more from the infirmities of human evidence than the uncertainty or variability of legal principles. Here the respondent for the oral declaration against the surrogate was given the opportunity to apologize, which he failed to do, and in this proceeding has given neither signs of regret at his conduct nor retracted, apologized, nor stated anything in extenuation or in mitigation. The excitement caused by overzealous advocacy is not even urged as an apology for the unusual misconduct complained of, or any explanation of it given. On the contrary, the stubborn repetition of the charges confirms their utterance as deliberately and intentionally made, and, from the manner in which they were made, justifies the presumption of an improper motive. Indeed, the conduct of the respondent was and is so flagrantly subversive of law, order, and decorum that there can be no hesitation as to the consequences that must ensue in the absence of any mitigating circumstances. It was said in Bradley v. Fisher, 13 Wall. [335], 355, 20 L.Ed. 646, that the obligations which attorneys impliedly assume, if they do not by express declaration take them upon themselves when they are admitted to the bar, is (are) not merely to be obedient to the constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct towards the judges personally for their judicial acts. In that case the attorney was stricken from the roll for threatening with personal chastisement a judge who was presiding in a case then pending, and in which the counsel was en-

gaged; and although it is not necessary, perhaps, to refer to it,—there being no doubt whatever upon the subject,—it was there declared that the power to remove attorneys from the bar is possessed by all courts which have authority to admit them to practice. * * *'

"In Matter of Bevans, 225 App.Div. 427, 233 N.Y.S. 439, 443 the court said: 'In this and in other jurisdictions, the rule is well settled that an attorney who engages in making false, scandalous, or other improper attacks upon a judicial officer is subject to discipline. Matter of Manheim, 113 App. Div. 136, 99 N.Y.S. 87; Matter of Rockmore, 127 id. 499, 111 N.Y.S. 879; Matter of Carrao, 170 id. 545, 156 N.Y.S. 379; Matter of Murray, 58 Hun 604, 11 N.Y.S. 336; Bradley v. Fisher, 13 Wall. 335, 355 [20 L.Ed. 646]; Cobb v. United States, 9 Cir., 172 F. 641; Thatcher v. United States, 6 Cir., 212 id. 801; Matter of Mains, 121 Mich. 603, 80 N.W. 714.'

"After due notice of the serious charges made against him, the respondent failed to answer and failed to appear either in person or by attorney at the hearings before the official referee and interposed no defense and offered no evidence in explanation or justification of his charges. He has taken the position that if the charges made by him are false he may be prosecuted in the courts having jurisdiction of criminal proceedings. The appropriate course to be pursued in that direction may be determined by those charged with the administration of the criminal law or by the victims of the respondent's malicious attacks. We are here concerned only with the fitness of the respondent to remain a member of an honorable profession.

"On the record before this court, we are of the opinion that the respondent is guilty of gross moral turpitude and is unfit to remain a member of the Bar."

The record here shows that the proof presented fully supports and justifies the findings and recommendation. It is ordered that the respondent, Harlan E. Grimes, be, and he is hereby disbarred.