In the Matter of BARTON BAKER, an Attorney, Respondent. MONROE COUNTY BAR ASSOCIATION, Petitioner.

Fourth Department, May 21, 1970.

*Erwin N. Witt* for petitioner.

*Charles S. Desmond* for respondent.

*Per Curiam.* Respondent was admitted to the Bar by this court on September 27, 1923. The Monroe County Bar Association's petition alleges that in a Surrogate's Court proceeding to settle the account of respondent as executor of a will, objections to his account were filed on behalf of legatees by three law firms because of his failure to include therein 1,000 shares of Eastman Kodak Company stock and a bank account. After a trial of the issues at which respondent claimed that the disputed items were given to him by the decedent and, after the matter had been fully heard by the Surrogate but before a decision was rendered, respondent settled the claims of objectors by payment of approximately $120,000 to the objecting legatees and their attorneys. Immediately thereafter he filed the first of five affidavits filed by him in Monroe County Clerk's office and submitted a statement to the Constitutional Convention Committee of the Monroe County Bar Association which contained unwarranted and irresponsible attacks upon the integrity of the Surrogate and one of the law firms.

Respondent answered the petition admitting that the documents were recorded and presented by him and moved before us to dismiss the petition on the ground that his utterances were privileged and within his rights under the First and Fourteenth Amendments to the United States Constitution and section 8 of article I of the New York State Constitution. We denied the motion with leave to renew it in this court upon all the proof submitted at an evidentiary hearing and we appointed a Referee to take proof upon the issues raised by the petition and answer.

A transcript of the trial in Surrogate's Court shows that in January, 1962 respondent moved his 94-year-old uncle from St. Louis to a sanitarium in Rochester. On January 18, 1962, the respondent transferred the uncle's $38,500 bank account to himself. On January 20, 1962, his uncle executed a will, drawn by respondent, naming respondent his executor and on the next day respondent arranged the transfer of 1,000 shares of his uncle's Eastman Kodak stock to himself. The evidence established the existence of a fiduciary relationship between respondent and the testator which cast a heavy burden upon respondent to show that the transfers were the voluntary, intelligent and competent acts of the testator (*Barnard* v. *Gantz*, 140 N. Y. 249, 256). The sanitarium physician testified that on January 20, 1962, testator was mal-nourished, had hardening of the

arteries with resulting heart and cerebral manifestations, was confused, disoriented as to time, and had tremors in his head and hands. Respondent's testimony in support of his claim that the stock and bank account were gifts to him by the testator was corroborated only by respondent's wife.

At the close of the evidence the Surrogate suggested to counsel that they discuss the possibility of a compromise with him on some day of the next week. He said " I will not compel any attorney to do so if the attorney does not wish to do so." He mentioned the amount involved as $300,000, the possibility of an appeal, and said he would be glad to discuss the matter with all of them.

Respondent employed a prominent and able attorney to represent him in reaching a settlement, who recommended a settlement which respondent rejected. Respondent employed another attorney who also recommended settlement and did in fact consummate a settlement at respondent's direction. Respondent's attorney advised him that it was in his best interest to settle the matter before a decision was rendered by the Surrogate and recommended the settlement which, although then rejected, was ultimately consummated. The matter was then settled by the execution of the necessary documents by all the parties and respondent paid the settlement amount after which payment the objections were withdrawn. The attorney who represented respondent when the settlement agreement was signed testified that he had recommended it. A similar statement as to the wisdom of the settlement had been made by his first attorney.

Respondent thereafter recorded the affidavits in Monroe County Clerk's office on the respective dates of September 26, 1966, December 5, 1966, February 6, 1967, June 7, 1967, and July 25, 1967. He testified that the reason for recording the first one was to base a claim for income tax deductions on it. This statement, being uncorroborated by any letters to or from the Internal Revenue Department, is entitled to little weight. His testimony on cross-examination shows that four of the statements were in no way related to any tax question but were in fact intemperate and vicious attacks upon the Surrogate and the attorneys, as found by the Referee. He made no claim that such affidavits were recorded for any proper purpose although the last one recites, " This affidavit  *  *  *  should be useful in assisting in appropriate action as to the conduct of the attorneys for said group and further describes the participation of the Surrogate in encouraging said ' settlement,' ". If respondent believed he had a legitimate complaint as to the

conduct of the attorneys, he could have availed himself of the established procedure in the Appellate Division (Judiciary Law, § 90). Adequate machinery is provided for charging the Surrogate with malfeasance or misfeasance in office. A Court on the Judiciary is the proper forum to explore fully any complaint against the Surrogate for misconduct (N. Y. Const., art. VI, § 22). Filing complaints in the County Clerk's office serves no purpose and the County Clerk's filing system was never intended for such use and the act of filing is proof of respondent's malice (cf. *Matter of Manheim,* 113 App. Div. 136; *Matter of Murray,* 58 Hun 604, opn. in 11 N. Y. S. 336; *Matter of Rockmore,* 127 App. Div. 499).

The affidavits contain many statements which respondent, having participated in the trial, knew to be false such as: '' the objections are false and baseless '', '' the false statements of counsel amounted to libel '', '' counsel McNabb filed false and baseless objections '', '' The surrogate's conduct of the trial was highly prejudicial and unfair to the executor '', '' The Surrogate apparently tried to intimidate the executor putting in his case '', and '' removal of the Monroe County Surrogate would be appropriate ''. In his further statement filed with a committee of the Monroe County Bar Association he referred to crooked Judges and stated that an investigation would show examples of worse abuses in Monroe County and specifically referred to the Surrogate. Referring to his own case by the fictitious name of '' E. Z. Plunder '' he asserted that the law firm undertook unconscionable exaction of more than the entire estate with the approval of the Surrogate. The Referee found '' the statements made by the respondent concerning both the Surrogate and the Goldstein firm were in fact calculated falsehoods, made with knowledge of their falsity and with reckless disregard of the truth ''. The Referee further found, '' on the state of the record in the Surrogate's Court and in view of the advice of his counsel, and the fact of the settlement in accordance with such advice, considering the nature of the specific charges of misconduct by respondent against the Court and counsel which were directed to the proceedings in that case, we can only conclude that the respondent's statements were malicious in their intent and purpose ''. In our opinion the findings of the Referee are amply supported by the evidence.

*New York Times Co.* v. *Sullivan* (376 U. S. 254) holds that the constitutional guarantees of free speech prohibit a public official from recovering damages for a defamatory falsehood relating to his official conduct unless the statement was made with knowledge that it was false. In our opinion respondent

knew that the defamatory statements made by him were false and, therefore, the rule stated in the *New York Times* case has no application. Respondent was present and participated at the trial and had personal knowledge of what actually occurred there. His statements which differ from such occurrences are false and the falsity thereof is within his own observation and knowledge. This knowledge further confirms respondent's misconduct.

Respondent's statements accusing the Surrogate of prejudice, unfairness, permitting and approving unconscionable exaction from estates and attempted intimidation of respondent are more than an offense against the Surrogate as an individual. These baseless, contumacious charges are offenses against the dignity and integrity of the courts and our judicial system. " It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the court. In this and in other jurisdictions, the rule is well settled that an attorney who engages in making false, scandalous or other improper attacks upon a judicial officer is subject to discipline." (*Matter of Bevans,* 225 App. Div. 427, 431.)

While the apology, which respondent's attorney read to the Referee with respondent's approval, should be considered (*Matter of Greenfield,* 24 A D 2d 651; *Matter of Rockmore,* 127 App. Div. 499) we must also consider his remarks before us in opposition to confirmation of the Referee's report reiterating his charges and referring to himself as the aggrieved party. By his remarks he reconfirmed his position that he was justified and indicated no good faith recantation of his improper conduct.

We deny respondent's renewed motion to dismiss the petition, confirm the Referee's report and his finding that respondent was guilty of professional misconduct in violation of canons 1 and 3 of the Canons of Professional Ethics, and we further find that he violated canon 29.

After weighing all the factors which must be considered in a disciplinary proceeding we conclude that respondent should be suspended for a period of six months and thereafter until further order of this court.

DEL VECCHIO, J. P., MARSH, WITMER, BASTOW and HENRY, JJ., concur.

Order entered suspending respondent for a period of six months and thereafter until further order of the court.