In the Matter of the JUSTICES OF THE APPELLATE DIVISION, FIRST DEPARTMENT, Petitioners, v. MARTIN ERDMANN, Respondent.

Third Department, June 27, 1972.

*Daniel M. Shientag* for petitioners.

*Ellis, Stringfellow, Patton & Leibovitz* (*William Leibovitz* of counsel), for respondent.

*Association of the Bar of the City of New York, amicus curiae.*

*Per Curiam.* In this proceeding to discipline an attorney, which proceeding was instituted in the Appellate Division, First Department, and subsequently transferred to this court, petitioners move for an order sustaining the petition and charges to the extent of finding respondent guilty of professional misconduct. Respondent cross-moves for orders 1) dismissing the petition and charges as being inadequate as a matter of law to sustain the alleged violations; 2) disqualifying the Justices of all departments of the Appellate Division from adjudicating this proceeding on the ground that all Appellate Division Justices are " interested " in the proceeding; and 3) opening and making public all prior and future proceedings in this matter. Petitioners' motion for an order sustaining the petition and charges is premised on the ground that the charges arise out of conduct on the part of respondent as to which there is no material factual dispute so that the matter can be determined on the pleadings, exhibits and papers presently before the court.

The charges of professional misconduct against respondent

arose as the result of the publication of an article entitled "I Have Nothing to Do with Justice", which appeared in the March 12, 1971 issue of *Life* magazine. The petition alleges that, according to the article, respondent's attitude towards Judges is one of disrespect "so strong and all-inclusive that it amounts at times to class hatred". Although the entire article is referred to by reference, the offending language, alleged to have been said of and concerning the courts in the First Judicial Department, appears in paragraph 5 as follows: "There are so few trial judges who just judge, who rule on questions of law, and leave guilt or innocence to the jury. And Appellate Division judges aren't any better. They're the whores who became madams."

"I would like to [be a judge] just to see if I could be the kind of judge I think a judge should be. But the only way you can get it is to be in politics or buy it—and I don't even know the going price."

While respondent's statements and the language used in the article are alleged to be violative of enumerated sections of the Canons of Professional Ethics and Code of Professional Responsibility, the Justices additionally accuse respondent, by his use of unrestrained and intemperate language, of lessening public confidence in our legal system and of failing to uphold the dignity of the judiciary.

The courts have frequently recognized that an attorney, both as an officer of the court and a citizen, has a right to criticize the acts of courts and Judges, but this does not mean that an attorney may indulge in unfounded and intemperate criticism, insulting language or abuse. (See 12 ALR 3d 1408.) In *Matter of Bevans* (225 App. Div. 427, 431) we said the following: "Judicial officers * * * are not immune from suit or criticism; but, like every one else, they are protected against scandalous charges. To make a public, false and malicious attack on a judicial officer is more than an offense against him individually; it is an offense against the dignity and integrity of the courts and of our judicial system. It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the court. In this and in other jurisdictions, the rule is well settled that an attorney who engages in making false, scandalous or other improper attacks upon a judicial officer is subject to discipline."

We find that the intemperate, vulgar and insulting language contained in the statement quoted above and concededly used

by respondent is an offense against the dignity and the integrity of the courts and tends to create disrespect for judicial officers generally thereby lessening public confidence in our legal system.

Accordingly, we find respondent guilty of professional misconduct and sustain the petition and charges to the extent noted. Respondent's cross motion, insofar as it seeks an order opening and making public all prior and future proceedings in this matter, is granted. In all other respects, the cross motion is denied. Under all the circumstances, we are of the opinion that censure is the approprate measure of discipline.

We take pains to point out, however, that nothing contained in this opinion should be interpreted as an attempt by this court to stifle criticism by members of the Bar of the courts or the judicial system, recognizing, as did Chief Justice SHARSWOOD of the Supreme Court of Pennsylvania almost a century ago, that "No class of the community ought to be allowed freer scope in the expression or publication of opinions as to the capacity, impartiality or integrity of judges than members of the bar. They have the best opportunities of observing and forming a correct judgment. They are in constant attendance on the courts. Hundreds of those who are called on to vote never enter a court-house, or if they do, it is only at intervals as jurors, witnesses or parties. To say that an attorney can only act or speak on this subject under liability to be called to account and to be deprived of his profession and livelihood by the very judge or judges whom he may consider it his duty to attack and expose, is a position too monstrous to be entertained for a moment under our present system." (*Matter of Steinman,* 95 Pa. 220, 238–239).

Respondent should be censured.

GREENBLOTT, J. (dissenting). The petition instituted by the Justices of the Appellate Division, First Department, specifically charges that respondent violated Disciplinary Rules 1–102, 1–103 (B), 2–101 (A) and (B), and 8–102 (A) and (B) and Ethical Considerations 1–5, 8–6 and 9–2 of the Code of Professional Responsibility of the American Bar Association, adopted without change by the New York State Bar Association, and canon 1 of the Canons of Professional Ethics.

The majority has found respondent guilty of using "intemperate, vulgar and insulting language" which they consider to be "an offense against the dignity and the integrity of the courts and tends to create disrespect for judicial officers generally thereby lessening public confidence in our legal system." They have therefore decided to censure respondent. From an

analysis of their language I can only conclude that they have found respondent innocent of all charges of having violated disciplinary rules. With this I agree. However, they have apparently censured respondent as a result of their conclusion that he is guilty of a violation of an ethical consideration. With this I cannot agree.

Ethical considerations cannot result in censure as, unlike the disciplinary rules, they are aspirational in character rather than mandatory (see Preliminary Statement to the Code of Professional Responsibility). This is even recognized by petitioners whose reply concedes that ethical considerations are merely guidelines. Since ethical considerations are not in and of themselves mandatory rules, the findings of the majority should not be the basis for formal disciplinary action as is here being taken.

There are many other aspects of this case which militate against the result reached by the majority. The Grievance Committee of the Association of the Bar of the City of New York, which had recommended after their initial investigation that formal disciplinary action not be taken against respondent, has filed a memorandum in respondent's behalf. It states, in part, that respondent, "in a letter to the editors of the magazine in question (not published), and on other occasions disavowed any intention to attribute venality or personal dishonesty to members of the judiciary and he has expressed regret that his ' looseness of speech ' lent itself to such interpretation." These attempts by respondent to take corrective action should be favorably considered by this court in evaluating respondent's conduct.

The majority's opinion is directed at the following quotation:

" There are so few trial judges who just judge, who rule on questions of law, and leave guilt or innocence to the jury. And Appellate Division judges aren't any better. They're the whores who became madams."

" I would like to [be a judge] just to see if I could be the kind of judge I think a judge should be. But the only way you can get it is to be in politics or buy it—and I don't even know the going price."

The metaphor referring to the elevation in status of Appellate Division Justices is clearly a figure of speech and although the language was colorful, cannot possibly be taken literally as an accusation. A lawyer should not be punished solely on the basis of intemperate remarks especially when these remarks deal with matters of broad current public concern which have

been widely discussed in newspapers, magazines and professional journals. Respondent, as a Public Defender who has practiced for years in a contentious and frustrating field of the law, was qualified to make some comment about the status of the criminal court system in New York City and was, in fact, directed to do so by his superior. In addition, the article's criticisms were not directed at any individual.

Finally, there is another aspect to this matter which troubles me deeply. Overshadowing all else are serious and weighty constitutional questions (see *Erdmann* v. *Stevens,* 458 F. 2d 1205). Certainly it cannot be doubted that a citizen has the right under the First and Fourteenth Amendments of the United States Constitution and article I of the New York State Constitution to criticize the judiciary or any other branch of our State and Federal Governments. Although a member of the Bar must maintain the highest standards of ethical conduct in fulfilling his professional responsibilities (see *Matter of Baker,* 28 N Y 2d 977, affg. 34 A D 2d 229), he should not be forced to surrender his valuable constitutional rights.

For the reasons enumerated above, I respectfully dissent. The petition should, in my opinion, be dismissed.

HERLIHY, P. J., STALEY, JR., and REYNOLDS, JJ., concur in *Per Curiam* opinion; GREENBLOTT and SIMONS, JJ., dissent and vote to dismiss in an opinion by GREENBLOTT, J.

Respondent censured.