**In re Paul G. EVANS, Petitioner.**

**No. 86–1569.**

United States Court of Appeals,
Fourth Circuit

Argued July 17, 1986.

Decided Sept. 23, 1986.

Paul G. Evans, Baltimore, Md., pro se.

Peter Frederick Axelrad (Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for respondent.

Before WIDENER, HALL and MURNAGHAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Paul G. Evans, an attorney, appeals from an order of the United States District Court sitting in the District of Maryland, disbarring him from the practice of law in that court. We affirm.

I.

In April, 1980, attorneys Arthur Webster, Paul D. Bekman, and the law firm of Kaplan Heyman Greenberg filed a diversity action in the United States District Court sitting in the District of Maryland, naming James D. Brown and Louis Rogers as plaintiffs. The action was brought to recover damages incurred when Brown's automobile, which was being driven by Rogers, collided with a tractor-trailer in Maryland. It is now alleged that Brown did not retain the Kaplan firm or authorize it to proceed in his behalf. In any event, after Brown refused an offer of settlement proposed by defendants' insurance company, he retained appellant Evans to represent him. On behalf of Brown, Evans filed a cross-complaint against Rogers and add-

ed Rogers' brother, George, as a defendant, claiming fraudulent conversion of his automobile. Through Evans, Brown eventually moved for partial summary judgment.

On July 12, 1984, District Judge Joseph C. Howard referred the case to Magistrate Frederic N. Smalkin to rule on all pending motions. Magistrate Smalkin filed a report on September 11, 1984, in which he recommended that the case be dismissed for lack of subject matter jurisdiction due to Brown's failure to prove an amount in controversy in excess of $10,000.

Brown, through Evans, filed timely objections to Magistrate Smalkin's report with Judge Howard. On November 19, 1984, Judge Howard, after conducting a *de novo* review, issued an opinion, which adopted the magistrate's report and ordered the case dismissed for lack of subject matter jurisdiction. An order dismissing Brown's case and entering judgment in favor of defendants was filed the following day. On December 10, 1984, Evans appealed to this Court on Brown's behalf. His subsequent motion for summary reversal was denied by this Court on June 12, 1985.

While the appeal was still pending, Evans wrote a letter on June 24, 1985, to Magistrate Smalkin. Evans' letter stated in pertinent part as follows:

> I feel that your Report was either the result of your incompetence in the matter or perhaps worse and reflected a Jewish bias in favor of the Kaplan firm whose actions were in my judgment inexcusable in this cause. If in fact it represents incompetence I will drop the matter but if it is a Jewish bias I will file a complaint under the Rules for Handling Complaints of Judicial Misconduct or Disability.
>
> Before I take such action I afford you an opportunity of setting forth your reasons for you [sic] prejudiced and incomplete Report.

Magistrate Smalkin responded with a letter to Evans, dated June 26, 1985, in which he stated:

> This will respond to your scurrilous correspondence of June 24, 1985. I think

you should know that I am taking the appropriate steps to refer this matter for disciplinary action against you.

> I assure you that I did not in this case, nor have I in any other case I have ever handled, display any bias against any person or in favor of any person for any reason, let alone for reasons of the religion of a party's counsel. Your accusations do not merit any further comment.

Evans filed a complaint against Magistrate Smalkin with the Judicial Council for the Fourth Circuit on June 29, 1985. Pursuant to 28 U.S.C. § 372(c)(3)(A)(ii), the complaint was dismissed by order of Chief Judge Winter filed on July 10, 1985, on the ground that it directly related to the merits of the magistrate's ruling, and, as such, was beyond the scope of the statute.

On September 24, 1985, District Judge James R. Miller, Jr. wrote to Evans, advising him, on behalf of the district court's disciplinary committee, that his letter to Magistrate Smalkin was arguably in violation of the following three rules of professional responsibility: DR 1–102(A)(5) ("A lawyer shall not engage in conduct that is prejudicial to the administration of justice."); DR 7–106(C)(6) ("In appearing in his professional capacity before a tribunal, a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal."); and DR 8–102(B) ("A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."). Judge Miller further provided Evans with an opportunity to set forth in writing any explanation he cared to make in justification of his actions. Finally, Evans was informed that the committee preferred to defer any action on the matter pending resolution of the appeal to this Court in the *Brown* case.

On September 27, 1985, Evans wrote to Judge Miller, objecting to deferral of the matter pending the appeal in *Brown* and stating that:

> In respect of the opportunity you have offered to set forth in writing any explanation I care to make, I stand on the

record in the above case as well as the record in the proceedings in the Fourth Circuit Judicial Council, copies of which are enclosed.

I repeat my charge that Magistrate Smalkin was either incompetent or biased and I note he has failed to deny either charge. I desire an opportunity to call the Magistrate and examine him under oath if a hearing is held in this matter. I do not personally know him and if there is to be a hearing I desire ample notice so that I might investigate his background and read opinions authored by him.

In subsequent correspondence to Judge Miller, Evans reiterated his desire to subpoena Magistrate Smalkin. On November 8, 1985, Evans further wrote:

I find the decision of the Disciplinary Committee to defer any action in this matter until after the appeal has been resolved is incredible. I repeat my claim that Magistrate Smalkin either was grossly incompetent or biased in favor of the Jewish firm that represented the defendants Rogers in *Brown v. Rogers*, C.A. No. JH–80–855 and against me and my client Brown, or both. I now repeat such charge and will continue to hold such belief and forthrightly make such claim notwithstanding the outcome of any appeal.

On January 2, 1986, a panel of this Court affirmed the dismissal of the *Brown* case, specifically rejecting Brown's jurisdictional contentions. *Brown v. Rogers*, No. 84–2380 (4th Cir. January 2, 1986) (unpublished).

Subsequently, District Judge Herbert F. Murray entered an order on January 9, 1986, requiring Evans to show cause why he should not be disciplined for writing the June 24, 1985, letter to Magistrate Smalkin, in violation of DR 1–102(A)(5), DR 7–106(C)(6), and DR 8–102(B). Evans filed a response on January 25, 1986, defending his conduct and stating that, "only three inferences are possible after reading the (magistrate's) report: (i) the Magistrate was incompetent; (ii) prejudiced; or (iii)

both." Evans also stated that he was duty-bound to seek an investigation "of the reasons for the egregious errors committed by the Magistrate," that he did not apologize for his actions, and that "as a matter of conscience [he] would repeat them under similar circumstances." Appellant did not request a hearing.

On February 5, 1986, Judge Miller filed a report in which he recommended that Evans be disbarred from further practice in the district court. Judge Miller reasoned that:

The repeated assertions by Mr. Evans, even after the dispositive approving opinion of the Fourth Circuit Court of Appeals on the very matters which Mr. Evans contends were erroneously decided by the Magistrate, and his continued and unrelenting groundless assertions that the Magistrate acted out of bias, rather than in compliance with well-established rules of law, make it apparent that Mr. Evans acted originally, and continues to act, in a way that is prejudicial to the administration of justice in violation of DR 1–102(A)(5), in a way which is undignified and discourteous and degrading to a tribunal in which he appeared in his professional capacity, in violation of DR 7–106(C)(6), and that he has made accusations against a judge or other adjudicatory officer which he knew or should have known were false, in violation of DR 8–102(B). In view of the circumstances outlined here, the undersigned member of this Court is of the view that the respondent lacks the necessary mental and character qualifications to continue to practice law in this Court.

This report was subsequently adopted by the district court, which on February 12, 1986, entered an order of disbarment, signed by eight of the district judges. This appeal followed.

## II.

On appeal, Evans contends that his remarks to Magistrate Smalkin are protected conduct under the first amendment and, therefore, not subject to the disciplinary

sanction of disbarment. Appellant also argues that he was deprived of his right to a hearing below, that Judge Miller's participation in the disbarment proceedings was improper, and that the record is incomplete. We disagree with each of these contentions.

■■■ A court has the inherent authority to disbar or suspend lawyers from practice. *In re Snyder*, —— U.S. ——, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985). This authority is derived from the lawyer's role as an officer of the court. *Id.* Moreover, as an appellate court, we owe substantial deference to the district court in such matters:

> On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the court itself.

*Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 529–30, 6 L.Ed. 152 (1824). *See also, In re: G.L.S.*, 745 F.2d 856 (4th Cir.1984). In this case, we can only conclude that the district court's disbarment of Evans, based on his violation of the rules of professional conduct, is amply supported by the record and did not exceed the limits of the court's discretion.

Evans' letter, accusing Magistrate Smalkin of incompetence and/or religious and racial bias, was unquestionably undignified, discourteous, and degrading. Moreover, it was written while the *Brown* case was on appeal to this Court and was thus properly viewed by the district court as an attempt to prejudice the administration of justice in the course of the litigation.

In addition, Evans' accusation, which he repeated throughout the proceedings below and has continued to repeat on appeal, was based solely on the magistrate's single decision against appellant's client in the *Brown* case—a decision which this Court ultimately affirmed. We note that Evans never took any action against the Kaplan firm, which he viewed as having acted without Brown's authorization. More significantly, Evans never made any attempt to investigate the magistrate's actions in other proceedings or otherwise establish a reasoned basis for the charges of incompetence or bias. Appellant's failure to substantiate charges as grave as the ones leveled here certainly constitute the making of accusations which he knew or reasonably should have known to be false.

Finally, appellant's failure to investigate, coupled with his unrelenting reassertion of the charges even after this Court's affirmance in *Brown*, convincingly demonstrates his lack of integrity and fitness to practice law. A person guilty of such practices is, as at least one court has commented:

> dangerous in any walk of life and is especially so when he occupies the responsible position of an attorney upon whose good faith, truthfulness, sense of propriety and ethical standards both courts and litigants are entitled to rely.

*In the Matter of Greenfield*, 24 A.D.2d 651, 262 N.Y.S.2d 349, 351 (N.Y.App.Div. 1965).

Although courts and judges may lawfully be criticized, we are not at all persuaded, as our foregoing remarks illustrate, by appellant's position that the type of "criticism" involved here is protected first amendment expression for which disbarment, contempt, or other disciplinary sanctions are unavailable. In the first place, the issue here is not contempt but the qualification of appellant to practice law in the district court of Maryland. Therefore, the cases which appellant has cited to us involving the limits of a court's contempt powers are not dispositive. Secondly, al-

though the circumstances of this case may be somewhat unique, we are aware of other cases, involving substantially similar occurrences, which provide clear support for the district court's disbarment of Evans.

In *Greenfield, supra,* an attorney was suspended from practice for three years for professional misconduct and conduct prejudicial to the administration of justice. After a judge had denied the attorney's motion in a pending action, Greenfield, along with another attorney, Rothstein, wrote two letters to the judge accusing him without any basis in fact of misconduct in office. The attorneys also prepared and circulated letters and affidavits concerning the alleged misconduct to the presiding judge of the court, as well as the Governor, the District Attorney, and the Judicial Conference. Greenfield later recanted the charges and apologized for his conduct, stating that he had acted on the basis of false information given to him by Rothstein and another associate, which he had accepted without making any investigation.[1] In support of its suspension order, the New York court observed:

> Judicial officers, as we have said, are not immune from suit or criticism; but, like every one else, they are protected against scandalous charges. To make a public, false and malicious attack on a judicial officer is more than an offense against him individually; it is an offense against the dignity and integrity of the courts and of our judicial system. It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the court. In this and in other jurisdictions, the rule is well settled that an attorney who engages in making false, scandalous or other improper attacks upon a judicial officer is subject to discipline.

*Id.* at 350–51 (quoting from *Matter of Bevans,* 225 A.D. 427, 431, 233 N.Y.S. 439, 443 (N.Y.App.Div.1929)) (citations omitted).

In a similar vein, the Supreme Court of Illinois ordered an attorney's name stricken from the rolls of practicing lawyers after the attorney had brought an unauthorized lawsuit, furnished a story to the press, and wrote a letter to a judge, who had decided a divorce case against his client. The letter stated in part that the attorney was usually engaged in dealing with men and not irresponsible political manikins or appearances of men. Although the attorney denied that his letter to the judge was scurrilous, defamatory, or without justification, the Illinois court held:

> There was not the slightest irregularity or illegality in the action of Judge Thomson in permitting the bill of review to be filed, setting aside the decree of divorce, permitting an answer and cross-bill to be filed or granting the divorce to Peter W. Petersen. Judges are not exempt from just criticism, and whenever there is proper ground for serious complaint against a judge it is the right and duty of a lawyer to submit his grievances to the proper authorities, but the public interest and the administration of the law demand that the courts should have the confidence and respect of the people. Unjust criticism, insulting language and offensive conduct toward the judges, personally, by attorneys, who are officers of the court, which tend to bring the courts and the law into disrepute and to destroy public confidence in their integrity, cannot be permitted. The letter written to the judge was plainly an attempt to intimidate and influence him in the discharge of judicial functions, and the bringing of the unauthorized suit, together with the write-up in the Sunday papers, was intended and calculated to bring the court into disrepute with the public.

*The People ex rel. The Chicago Bar Association, Relator, v. Metzen,* 291 Ill. 55, 125 N.E. 734, 735 (1919). *Cf. Kentucky Bar Association v. Williams,* 682 S.W.2d 784 (Ky.1984) (lawyer suspended from the practice of law for three months due in part to

---

**1.** Here, to the contrary, Evans does not recant his charges or apologize for his actions—a factor which certainly can be considered in de-

ciding the severity of the sanction imposed and in choosing between disbarment or some lesser form of discipline.

a disrespectful letter to a trial judge labeled as "private correspondence to you as a man, and not in your capacity of a judge").

In other cases, letters critical of judges, which were written in the heat of anger or on impulse, have been the subject of suspensions and public reprimands. *See In re: Rogers*, 212 P. 1034 (N.M.1923); *In re: Manheim*, 113 A.D. 136, 99 N.Y.S., 87 (App.Div.1906). Although in these cases the courts declined to impose the ultimate sanction of disbarment, they nevertheless, strongly condemned such actions as violations of the rules of conduct and grounds for disbarment. Here, of course, Evans disclaims any suggestion that he was acting on impulse or in the heat of anger. Moreover, he waited until nine months after the magistrate's decision issued to make his calculated but unsubstantiated charges.[2] Given all of the circumstances present in this case, including Evans' repeated reassertions of the unsubstantiated charges, we find that the district court did not abuse its discretion in ordering Evans disbarred.

### III.

■ Furthermore, our examination of the record reveals no procedural irregularities in the conduct of the disbarment proceedings below. Evans was certainly given adequate notice of the charges which the court was considering against him as a result of his letter to Magistrate Smalkin. Although prior to the show cause order of January 9, 1986, Evans had indicated in correspondence to Judge Miller his desire to call the magistrate as a witness if a hearing were held, a hearing is not automatic under the district court's rules. Rule 2–A–V–D provides that:

Upon the respondent-attorney's answer to the order to show cause, if any issue of fact is raised or the respondent-attorney wishes to be heard in mitigation, this Court shall set the matter for prompt hearing. . . .

An attorney is charged with knowledge of a court's rules and Evans' failure to request a hearing when he answered the show cause order constitutes a waiver of his right to a hearing. Moreover, we are unable to see how a hearing would change the result reached below, in light of appellant's failure to contest any factual issue or present mitigating circumstances.

Nor do we perceive any basis for Evans' allegations of impropriety against Judge Miller. The participation of Judge Miller in the proceedings against Evans, both as a judge of the district court recommending disbarment and as a member of the court's disciplinary committee, suggests no impropriety. Unlike appellant, we find no attempt to mislead him into thinking that Judge Miller would not be further involved in the matter after Judge Murray signed the show cause order. Moreover, had Evans wished to seek the recusal of Judge Miller or any other district judge, he could have filed an appropriate motion at the time he was ordered to show cause why he should not be disciplined.

Finally, our review of the record, including the appendix prepared by Evans for this appeal, reveals no deficiencies in the state of the record.[3]

### IV.

For the foregoing reasons, the order of the district court, disbarring Evans from practicing law in that court, is affirmed.

AFFIRMED.

---

**2.** Furthermore, this case is unlike the one addressed by the Supreme Court in *In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985), where a lawyer's letter to a judge's secretary, criticizing the inequities of the Criminal Justice Act, was held not to be grounds for discipline.

**3.** We reject appellant's assertion at oral argument that because the letter dated July 2, 1985, from Magistrate Smalkin to Judge Walter E.

Black, Jr., a member of the district court's disciplinary committee, was made part of the record without its stated attachments, there are documents missing from the record which may not have been considered below. We conclude that, given the date and content of the July 2 letter, it must be inferred that any attachments were Evans' letter of June 24, 1985, to the magistrate, his response of June 26, 1985, and Evans' complaint to the Judicial Council.