**KENTUCKY BAR ASSOCIATION,**
Complainant,

v.

**Aubrey WILLIAMS, Respondent.**

Supreme Court of Kentucky.

Dec. 20, 1984.

Bruce K. Davis, Director, Michael M. Hooper, Asst. Director, Kentucky Bar Ass'n, Frankfort, for complainant.

Aubrey Williams, pro se.

John T. Ballantine, Gary Weiss, Louisville, for respondent.

OPINION OF THE COURT

ADOPTING RECOMMENDATIONS OF THE KENTUCKY BAR ASSOCIATION AS TO DISCIPLINARY ACTION

The Kentucky Bar Association has found respondent Aubrey Williams, a practicing attorney, guilty of two charges of unethical and unprofessional conduct tending to bring the bench and bar of Kentucky into disrepute and has recommended a suspension from the practice of law for a period of three months.

The first of the two charges arose out of the failure of respondent to appear in court to represent his client on the day when a jury trial had been scheduled, thus necessitating a continuance of the case. The second charge arose from a letter written by respondent to the trial judge. Respondent requested a review of the findings and recommendations of the Bar Association, and he requested, and was granted, oral argument.

The relevant facts are that respondent was employed to represent Raymond Hinkle, who was charged with first-degree arson in June, 1981.

Hinkle was indicted in October, 1981, and his case was set for trial, after consultation with respondent, on February 17, 1982. Respondent was a member of the Kentucky General Assembly, and it was known that the General Assembly would be in session in February, 1982. The trial judge testified that respondent assured him that he could be available for trial on February 17, 1982, while respondent testified the trial date was fixed with the understanding that it might have to be postponed if his duties in the legislature required it.

On December 8, 1981, a hearing was held concerning Hinkle's competency to stand trial and also on a motion to dismiss the indictment. Respondent was present at the

hearing. The order noted that trial was to be held February 17, 1982.

A pretrial conference was set for February 1, 1982, at 9:30 a.m. Respondent did not appear for this conference. The trial judge noted this fact in the pretrial order which again ordered that the case would proceed to trial on February 17, 1982.

Respondent wrote the trial judge a letter stating that the pretrial conference had completely slipped his mind and apologized for his failure to appear. This letter written on February 8, 1982, made no mention of continuance of the case.

On Friday, February 12, 1982, at 4:30 p.m., the trial judge received a motion for continuance because of conflicting legislative duties. The motion did not set a date for hearing, or request a hearing. The respondent did not contact the trial judge to secure a postponement of the trial, and no order granting a continuance was signed.

The defendant, Raymond Hinkle, was unable to execute bond. He had been confined in jail awaiting trial since June, 1981. He wrote the trial judge the following letter:

"I have been incaracated now going on twelve months. I have contacted my lawyer and he says that there might be a continuance in my case. I am writing you to let you know that it is my wish that there would not be a continuance in my case. I think that twelve months is adequate time to prepare a case such as mine.

Sincerely yours,
S/Raymond Hinkle"

When he received the motion for the continuance, the trial judge testified that a jury panel had been ordered to report to court on the 17th to try the case, that he fully expected it to be tried, but that he directed that the parents of Hinkle be notified to appear so that they would know why a continuance was necessary, if one had to be granted.

The respondent did not appear, and the case was continued for that reason. The trial judge, in a conference with Hinkle's parents later that day, asked them if respondent had been paid, how much he had been paid, and whether they desired that he report respondent to the Bar Association. The parents did not desire the judge to report the incident to the Bar Association, but he did so of his own volition.

On February 22, 1982, respondent wrote the trial judge as follows:

"Please regard this letter as private correspondence to you as a man, and not in your capacity of a judge: After talking with Raymond Hinkle's parents and receiving your order of February 17, 1982, I am appalled and thoroughly disgusted with your conduct on February 17, 1982.

"Your actions, were totally unwarranted and highly innocuous. For your information;

"1. You were already aware that I would be in the legislature. The February 17, 1982 date was set only because I had indicated during arraignment that I would possibly be available if my committee did not meet. And you insisted on setting a date, which was tentative, pending my legislative committments.

"2. I had talked with Mr. Croley at least one week before my motion for a continuance, advising him that I would not be able to try the case.

"3. Mr. Hamilton knew I would not be there, and advised me by phone (a call initiated by him, if I remember correctly) that you desired the presence of Mr. Hinkle's parents to explain to them why the case was being continued (approximately one week before the trial date).

"4. The matter of the Defendant's bond and the circumstances surrounding same, as related to the instant case, is totally irrelevant.

"5. My fee is a matter between my client and me. And the meddling which you and Mr. Hamilton engaged in was not only improper, but stinks to high heaven.

"There's little wonder the public, particularly the black community, has so little trust in our judicial system. And your conduct and that of Mr. Hamilton has re-enforced that distrust in the eyes of the Hinkles. I demand an apology from you personally and to my clients, otherwise, I'm going to file a complaint against you and Mr. Hamilton with the Judicial Removal Commission and the Bar Association.

"Very truly yours,

"S/Aubrey Williams"

A copy of the letter was forwarded to Hinkle's parents and to the Commonwealth Attorney. This, too, was reported to the Bar Association and became the basis of the second charge against respondent.

The respondent contends that the charges arose out of a misunderstanding but not out of disrespect for the court. He called the Assistant Commonwealth's Attorney before the trial date and informed him he would be unable to appear for the trial. The Assistant Commonwealth Attorney informed respondent that he would have no objection to a postponement of the trial; however, he also advised respondent that the judge would expect that his prior approval be secured for a postponement.

Respondent contends that he thought the case would be continued and that his appearance in court was unnecessary.

The deliberate failure of respondent to appear in court to represent his client was cavalier and disrespectful toward the court. It also constituted a failure in his representation of a client who did not want the case continued. The respondent may have thought the case would be continued, and indeed the motion to continue may have been sustained had he appeared in court, but respondent had no right at all to force a postponement of the trial by his deliberate and cavalier failure to appear in court. Respondent could move for a continuance, but he had no right to compel one.

■ Not only did the deliberate failure to appear show disrespect for the court, but it also interfered with orderly administration of justice and thereby tended to bring the Bench and Bar into disrepute.

■ In addition, the letter written to the trial judge by respondent is disrespectful on its face. The contents of the letter were not kept private but were furnished by respondent to the parents of the defendant and to the Commonwealth Attorney. Deliberately disrespectful actions toward the judiciary cannot help but tend to bring Bench and Bar into disrepute.

The evidence in the record supports the finding of the Bar Association of guilt on each of the charges. Counsel for respondent contended that even if the finding of guilt be upheld, a suspension from practice is not warranted by the facts of this case.

■ Respondent requested and was granted an oral argument in open court. During the course of the argument, it was disclosed that respondent had twice before, in 1978 and again in 1981, been privately reprimanded for unethical and unprofessional conduct. Some consideration must be given to the fact that these previous private reprimands have failed in their purpose. The seriousness of the charges here reviewed, coupled with the fact that respondent has twice before been privately reprimanded for unprofessional conduct, convinces us that the suspension from the practice of law for a period of three months as recommended by the Kentucky Bar Association, is fully warranted.

STEPHENS, C.J., and VANCE, GANT, LEIBSON, AKER, STEPHENSON and WINTERSHEIMER, JJ., sitting.

All concur except AKER, J., who would limit the discipline imposed to a public reprimand.