*Attorney Grievance Commission of Maryland v. James Albert Frost*, Misc. Docket AG No. 69, September Term, 2012, Opinion by Greene, J.

ATTORNEY DISCIPLINE – Attorney's knowingly false statements impugning the integrity and qualifications of several judges and public legal officers constitute a violation of MLRPC 8.2(a) and are not protected speech under the First Amendment to the United States Constitution. Where an attorney makes repeated false allegations about the qualifications or integrity of "a judge, adjudicatory officer or public legal officer," without any explanation or investigation into the substance of those allegations, he has demonstrated a lack of fitness to practice law. Under the circumstances, the appropriate sanction for violations of MLRPC 8.1(b), 8.2(a), 8.4(a), (c) and (d) is disbarment.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 69

September Term, 2012
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JAMES ALBERT FROST
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Greene, J.
Adkins, J., concurs.
McDonald, J., concurs and dissents.
_____

Filed: February 26, 2014

The Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a), filed a "Petition for Disciplinary or Remedial Action" against James Albert Frost ("Respondent" or "Frost"), on December 5, 2012. Petitioner charged Frost with violating various Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rule"), specifically Rule 8.1 (Bar Admission and Disciplinary Matters),[1] Rule 8.2(a) (Judicial and Legal Officials);[2] and Rule 8.4(a), (c) and (d) (Misconduct).[3]

Pursuant to Maryland Rule 16-752(a) (Order Designating Judge), this Court referred the matter to the Honorable Paul F. Harris of the Circuit Court for Anne Arundel County to conduct an evidentiary hearing and to render findings of fact and recommend conclusions of law pursuant to Maryland Rule 16-757. After Petitioner made reasonable attempts to

---

[1] MLRPC 8.1 provides in pertinent part:
[A] lawyer . . . in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[2] MLRPC 8.2(a) provides:
A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

[3] MLRPC 8.4 provides in pertinent part:
It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]

personally serve Respondent with a copy of the Petition for Disciplinary or Remedial Action and related papers, including discovery requests and a written request for admission of facts and genuineness of documents,[4] Petitioner effectuated service on Respondent by serving the Client Protection Fund of the Bar of Maryland pursuant to Maryland Rule 16-753.[5] Respondent filed no response to the Petition for Disciplinary Action and discovery requests, including the Requests for Admissions, prompting the hearing judge's entry of an order of default. *See* Md. Rule 16-754(c) (providing that the failure to file an answer shall be treated as a default).

On May 14, 2013, Judge Harris conducted a hearing on the merits. Respondent failed

---

[4] The Affidavit of Robert C. Versis, Investigator for the Attorney Grievance Commission of Maryland, states that Mr. Versis traveled to Respondent's residence on two occasions. On the first occasion, despite hearing movement within Respondent's apartment, Mr. Versis received no response at the door. At that time, Mr. Versis also viewed photocopies of Respondent's birth certificate, driver's license, and Maryland State Bar Association identification card, which were affixed to the exterior of the apartment door. Mr. Versis left his business card with his telephone number at the apartment door, and the following day received a lengthy voicemail message from an individual who identified himself as "Jim Frost, James A. Frost." On the second occasion, Mr. Versis noticed an individual, whose appearance matched the photographs posted on Respondent's apartment door, standing at a nearby bus stop. Upon approaching the individual, Mr. Versis called Respondent's name, to which the individual responded, "Yeah?" After Mr. Versis displayed his identification badge, the individual stated "You can go to hell!" and ran towards and around the apartment building. Mr. Versis approached the building in his vehicle and then, exiting his vehicle, he was able to view the individual inside the building through a glass breezeway. Again, upon entering the building and knocking at Respondent's apartment door, Mr. Versis received no response.

[5] Md. Rule 16-753 provides in pertinent part: "If after reasonable efforts the attorney cannot be served personally, service may be made upon the employee designated by the Client Protection Fund of the Bar of Maryland pursuant to Rule 16-811 c 1 (x), who shall be deemed the attorney's agent for receipt of service."

to appear for or participate in the hearing. During the brief hearing, Petitioner requested that all of Petitioner's Requests for Admissions, which went unanswered by Respondent, be deemed admitted. Judge Harris granted the request and accepted the Requests for Admissions into evidence. Thereafter, the hearing judge issued "Findings of Fact and Conclusions of Law," in which he found by clear and convincing evidence that Respondent's actions constituted violations of MLRPC 8.1(b), 8.2(a), 8.4(a), (c) and (d). In doing so, Judge Harris made the following findings of facts:

> Respondent was admitted to the Maryland Bar on June 29, 1972. He does not maintain an office for the practice of law. On April 23, 2012, Respondent wrote an email to his ex-wife, stating, *inter alia*:
>
>> With regard to Case #110082-C, you know or should know that: (1) Ann S. Harrington, a lawless judge, arranged for deputy sheriffs of the Montgomery County, MD, Sheriff's Office to illegally arrest me on May 13, 2008, with no probable cause to do so and there by committed the crime under State of Maryland law of making a false report to an agency of the state with police powers; . . . (3) There was no basis in law or in fact for Judge Stephen P. Johnson, a weak man and corrupt judge acting under improper and political influence, to have me locked up in the county jail on a "no bond" order for 87 days and 87 nights but that's what was done; and (4) The crooked State's Attorney for Montgomery County, MD, John J. McCarthy, Esq., a protégé of Douglas F. Gansler, Esq., the corrupt Attorney General of Maryland, and a political ally of Maryland Governor O'Malley, a pretty-boy hack politician, didn't let his assistant prosecutors drop the phon[y] charge against me until August 8, 2008.
>>
>> With regard to Case #11041-C . . . you know or should know that the Maryland State Police deceived District Court of Maryland Commissioner Kaitlyn Boyle into signing a warrant to arrest me and then deceived Circuit Court Judge Joseph A. Dugan, Jr., into signing a search and seizure warrant by and through perjury on the warrant applications signed on August

3

13, 2008, by Maryland State Trooper Michael Brennan, who was ordered to do that by Maryland State Police Captain Clifford T. Hughes, his supervisor, and Maryland State Police Superintendent Terence B. Sheridan, who were acting under improper and political influence exerted (through an intermediary) by Governor O'Malley and his wife, Judge of the District Court of Maryland for Baltimore City Catherine Curran O'Malley.

Respondent made the April 23, 2012 statements regarding the Honorable Ann S. Harrington, specifically calling her a "lawless judge" and accusing her of "arrang[ing] for deputy sheriffs of the Montgomery County, MD Sheriff's Office to illegally arrest [him]" knowing the statements to be false and with reckless disregard as to their truth or falsity. Respondent has no facts to support the statements made regarding Judge Harrington.

Respondent made the April 23, 2012 statements regarding the Honorable Stephen P. Johnson, Retired Judge for the District Court of Maryland for Montgomery County, specifically calling him "a weak man and corrupt judge acting under improper and political influence . . ." knowing the statements to be false and with reckless disregard as to their truth or falsity. Respondent has no facts to support the statement regarding Judge Johnson.

Respondent made the April 23, 2012 statement regarding John J. McCarthy, State's Attorney for Montgomery County, specifically calling Mr. McCarthy a "crooked" State's Attorney, knowing the statement to be false and with reckless disregard as to its truth or falsity. Respondent has no facts to support the statement regarding Mr. McCarthy.

Respondent made the April 23, 2012 statement regarding Douglas F. Gansler, Attorney General of Maryland, specifically calling Mr. Gansler "corrupt," knowing the statement to be false and with reckless disregard as to its truth or falsity. Respondent has no facts to support the statement regarding Mr. Gansler.

Respondent made the April 23, 2012 statement regarding Governor O'Malley, specifically that he exerted "improper" influence over members of the Montgomery County Police Department, knowing the statement to be false and with reckless disregard as to its truth or falsity. Respondent has no facts to support the statement regarding Governor O'Malley.

4

Respondent made the April 23, 2012 statement regarding the Honorable Catherine Curran O'Malley, Judge [for the] District Court of Baltimore City, specifically that she exerted "improper" influence over members of the Montgomery County Police Department, knowing the statement to be false and with reckless disregard as to its truth or falsity. Respondent has no facts to support the statement regarding Judge Curran O'Malley.

On or about May 2, 2012, Respondent mailed a copy of the April 23, 2012 email to George Meng, Esquire. Prior to May 2, 2012, Respondent had no relationship or communication with Mr. Meng. On or about May 2, 2012, Respondent forwarded a copy of the April 23, 2012 email to Paul Carlin, Esquire. On or about May 2, 2012, Respondent forwarded a copy of the April 23, 2012 email to Katherine Kelly Howard, Esquire.

On May 4, 2012, Mr. Meng emailed Respondent asking why the April 23, 2012 email was sent to him, directing him to Rule 8.2, 8.3 and 8.4 of the Maryland Lawyers' Rules of Professional Conduct and requesting a response as how the April 23, 2012 email did not violate Rules 8.2 and 8.4 and did not require reporting to Petitioner pursuant to Rule 8.3. On May 10, 2012, no response having been received to his May 4 email, Mr. Meng again emailed Respondent requesting a response to the questions posed on May 4, 2012. On May 18, 2012, Respondent emailed Mr. Meng stating, "You should have something from me in your mail Monday." On May 18, 2012, Respondent mailed Mr. Meng a letter directed to Chief of Police J. Thomas Manger, Montgomery County, Maryland. The May 18, 2012 letter did not, in any way, respond to the questions posed by Mr. Meng in his emails of May 4 and May 10. Mr. Meng received the May 18, 2012 letter on May 21, 2012. On May 21, 2012, Mr. Meng emailed Respondent again requesting a response to his May 4 and May 10 emails.

On May 23, 2012, no further communication having been received from Respondent, Mr. Meng filed a complaint with the Petitioner and enclosed: (1) Respondent's April 23, 2012 email, (2) Mr. Meng's May 4, 2012 email to Respondent, (3) Mr. Meng's May 10, 2012 email to Respondent, (4) Mr. Meng's May 18, 2012 email to Respondent, (5) Respondent's letter of May 1, 2012 to Chief of Police J. Thomas Manger, and (6) Mr. Meng's May 21, 2012 email to Respondent.

By letter dated July 11, 2012, Bar Counsel forwarded a copy of the May 23, 2012 complaint and enclosures to Respondent and requested a response thereto be provided, in writing, no later than July 27, 2012. Respondent received Bar

5

Counsel's July 11, 2012 letter and enclosures. On or about July 26, 2012, Respondent sent a letter to Bar Counsel stating: "The statements of mine concerning which objections have been presented to your office are protected from state action by the free speech clause of the First Amendment to the United States Constitution." On or about July 27, 2012, Respondent sent a letter to Bar Counsel stating, *inter alia*:

> How did it happen, I wonder, that ten days after my e-mail message of April 24 long-time A.G.C. of Maryland Commissioner George Meng (to whom I had forwarded that e-mail on the subject <u>perjury</u>) sends me an e-mail message (for the first time in his life) with the absurd allegation that I'm in violation of Rule 8 of the Rules of Professional Responsibility? No reasonably prudent individual would believe that you and he and, most likely, some other people had not conferred with one another about me and my truth-telling before on May 4th George undertook his fruitless efforts to have me assume the role of attorney respondent who offers an explanation/states some defense to a "complaint." How did you as the Maryland Bar Counsel dare to get involved in this sort of activity, Glenn? You should be ashamed of yourself.

By letter dated July 31, 2012, Bar Counsel directed Respondent's attention to Rule 8.2(a) and specifically requested evidence to substantiate his April 24, 2012 statements regarding The Honorable Ann S. Harrington, The Honorable Stephen P. Johnson, State's Attorney John J. McCarthy, and Attorney General Douglas F. Gansler. A written response was required no later than August 13, 2012. Respondent received Bar Counsel's letter dated July 31, 2012. On or about August 4, 2012, Respondent sent a letter to Bar Counsel stating "The statements of mine concerning which objections have been presented to the Office of Maryland Bar Counsel are protected from state action by the free speech clause of the First Amendment to the United States Constitution." On or about August 6, 2012, Respondent sent a copy of the August 4, 2012 letter to Bar Counsel with the handwritten notation: "Ms. Lawless, Your letter to me dated July 11th constitutes state action."

Respondent never provided a substantive response to Bar Counsel's requests for information dated July 11, 2012 and July 31, 2012. Bar Counsel's requests for information were lawful. On or about August 15, 2012, Respondent sent a letter to Bar Counsel demanding to know how many complaints Bar Counsel had initiated. On or about September 13, 2012, Respondent sent a copy of a

letter addressed to "The Members of the Attorney Grievance Commission of Maryland" to Bar Counsel. The September 13, 2012 letter requested the commission "order Mr. Grossman to answer truthfully in writing the question posed to him in [the] August 15th letter *post haste*." In addition to sending the September 13 letter to Bar Counsel, Respondent sent copies to the members of the Attorney Grievance Commission. On or about September 19, 2012, Respondent sent a copy of his August 15, 2012 letter to Bar Counsel.

Judge Harris further entered the following conclusions of law, determining that Respondent violated MLRPC 8.1(b), 8.2(a), 8.4 (a), (c) and (d):

### Rule 8.1. Bar Admission and Disciplinary Matters

* * * *

Respondent violated Rule 8.1(b) when he failed to provide any substantive response to Bar Counsel's letters dated July 11, 2012 and July 31, 2012 containing lawful demands for information.

### Rule 8.2. Judicial and Legal Officers

* * * *

Respondent violated Rule 8.2(a) when, on April 23, 2012, he stated that the Honorable Ann S. Harrington was [a] "lawless judge" and accusing her of "arrang[ing] for deputy sheriffs of the Montgomery County, MD Sheriff's Office to illegally arrest [him]."

Respondent violated Rule 8.2(a) when, on April 23, 2012, he stated that the Honorable Stephen P. Johnson, Retired Judge for the District Court of Maryland for Montgomery County, was "a weak man and corrupt judge acting under improper and political influence . . ."

Respondent violated Rule 8.2(a) when, on April 23, 2012, he stated that the Honorable Catherine Curran O'Malley, Judge [for the] District Court of Maryland for Baltimore City, exerted "improper" influence over members of the Montgomery County Police Department.

Respondent violated Rule 8.2(a) when, on April 23, 2012, he stated that John J. McCarthy, State's Attorney for Montgomery County, was a "crooked"

7

[State's Attorney].

Respondent violated Rule 8.2(a) when, on April 23, 2012, he stated that Douglas F. Gansler, Attorney General of Maryland, was "corrupt."

Respondent violated Rule 8.2(a) when, on April 23, 2012, he stated that Governor O'Malley, exerted "improper" influence over members of the Montgomery County Police Department.

### Rule 8.4. Misconduct

\* \* \* \*

The [c]ourt, as discussed herein, having concluded that Respondent violated Rules 8.1(b), 8.2(a), 8.4(c) and (d) concludes that Respondent has also committed misconduct in violation of Rule 8.4(a).

Respondent violated Rule 8.4(c) when he made the statements regarding Judges Harrington, Johnson and Curran O'Malley, State's Attorney McCarthy, Attorney General Gansler and Governor O'Malley knowing the statements to be false.

Respondent's conduct, taken as a whole, violates Rule 8.4(d). (Citations omitted.)

Although Respondent did not at any time participate in the proceedings in the Circuit Court for Anne Arundel County, on May 23, 2013, he filed with this Court a motion to vacate any findings of fact and conclusions of law made by Judge Harris, and to dismiss the action for lack of proper service of process, which we denied on May 30, 2013.[6]

Neither Respondent nor Petitioner filed exceptions to the findings of fact and

---

[6] This "Motion to Vacate and to Dismiss" was filed nine days after the May 14, 2013 disciplinary hearing, and approximately two weeks before the June 13, 2013 filing of Judge Harris's written findings of facts and conclusions of law.

8

conclusions of law of the hearing judge.[7]  On July 5, 2013, Petitioner filed its Recommendation for Sanction, recommending disbarment.  On July 17, 2013, Respondent filed a new motion to dismiss with this Court, alleging principally that there was insufficient service of process upon him, that he had committed no violation of any Rule of Professional Responsibility, and that the statements underlying the instant action against him were protected by the Free Speech Clause of the First Amendment to the United States Constitution.  He further requested that this Court "dismiss this unjustified, unjustifiable, and downright ridiculous attorney disciplinary case."   Subsequently, on July 30, 2013, Respondent filed a "Statement" requesting this Court to consider Respondent's July 13, 2013 "Motion to Dismiss" as timely filed exceptions in this case.  Respondent's "Motion to Dismiss" was not, by its title or date, filed properly or timely under Rule 16-758(b),[8] and we decline to consider it to be timely filed exceptions.

## Discussion

In attorney discipline proceedings, "this Court has original and complete jurisdiction and conducts an independent review of the record . . . . [T]he hearing judge's findings of fact

---

[7] Although Petitioner did not file any exceptions to the hearing judge's findings and conclusions, *see* Rule 16-758(b), at oral argument before this Court, Petitioner conceded that the hearing judge erred in concluding that Respondent's statement about Governor O'Malley violated Rule 8.2(a), because, as discussed *infra*, the governor is not a "public legal officer" within the meaning of Rule 8.2(a).

[8] Rule 16-758(b) provides in relevant part: "Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge . . . ."  As Respondent stated in his "Statement," the deadline to file exceptions to Judge Harris's findings of fact and conclusions of law was July 8, 2013.

9

generally will be accepted unless they are clearly erroneous." *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 152, 879 A.2d 58, 76 (2005) (citations omitted). Maryland Rule 16-759(b)(2)(A) provides, "[i]f no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." In other words, we deem the hearing judge's findings of fact "correct if (1) they are not clearly erroneous, or (2), at th[is] Court's option, if neither party filed exceptions to them." *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 334, 68 A.3d 862, 868 (2013) (citations omitted). After a review of the record, and because neither Petitioner nor Respondent filed exceptions to the hearing judge's findings of fact, we conclude that the facts are established as determined by Judge Harris.

The hearing judge's proposed conclusions of law are reviewed for legal correctness. *Attorney Grievance Comm'n v. West*, 378 Md. 395, 410, 836 A.2d 588, 596 (2003). "In other words, the ultimate determination as to an attorney's alleged misconduct is reserved for this Court." *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 552, 16 A.3d 181, 192 (2011) (citation omitted). Based on our review of the record, we agree with the hearing judge that Respondent violated Rules 8.1(b), 8.2(a), 8.4(a), (c) and (d). We will, however, address Respondent's "Motion to Dismiss," in which he alleged that he was not properly served, and that his conduct, as it relates to the violation of Rule 8.2(a), is entitled to First Amendment protection. We conclude that his motion is without merit.

As noted previously, an order of default was entered against Respondent due to his failure to file an answer or participate in the disciplinary proceedings. Moreover, Respondent

10

failed to bring his claims regarding improper service to the attention of the hearing judge. Rather, his "motions to dismiss" were filed with this Court after the disciplinary hearing had concluded, thus the hearing judge was never given an opportunity to rule on them. Where Respondent failed to participate in or appear for the disciplinary hearing despite being properly served with process, and where the circumstances surrounding Petitioner's attempts to personally serve Respondent indicate his awareness of the instant proceedings, Respondent's failure to comply with the rules for disciplinary procedures is inexcusable. *See Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 361, 910 A.2d 429, 443 (2006) (holding that where an attorney received service of process and provided no valid reason for his failure to participate in the proceedings, the attorney's "failure to appear at the hearing [was] inexcusable" and that the order of default was proper); *Attorney Grievance Comm'n v. Faber*, 373 Md. 173, 178-79, 817 A.2d 205, 208-09 (2003) (rejecting the respondent's exception that he did not receive proper service and that he was denied due process, where bar counsel demonstrated repeated attempts to serve the respondent personally and on the Client Protection Fund of the Bar of Maryland). Therefore, we will not set aside the default entered against Respondent. We next address Respondent's First Amendment argument as it relates to the hearing judge's conclusion that Respondent violated Rule 8.2(a).

MLRPC Rule 8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or public legal officer, or of a candidate for election or appointment to judicial or legal office." The facts establish that

11

Respondent made the following statements in his email dated April 23, 2012, later disseminated to members of the Bar:

1. That the Honorable Ann S. Harrington was a "lawless judge" and accusing her of "arrang[ing] for deputy sheriffs of the Montgomery County, MD Sheriff's Office to illegally arrest [him];"

2. That the Honorable Stephen P. Johnson, Retired Judge for the District Court of Maryland for Montgomery County, was "a weak man and corrupt judge acting under improper and political influence;"

3. That the Honorable Catherine Curran O'Malley, Judge for the District Court of Maryland for Baltimore City, exerted "improper" influence over members of the Montgomery County Police Department;

4. That John J. McCarthy, State's Attorney for Montgomery County, was a "crooked" State's Attorney;

5. That Douglas F. Gansler, Attorney General of Maryland, was "corrupt;" and

6. That Governor O'Malley exerted "improper" influence over members of the Montgomery County Police Department.

Along with its Petition for Disciplinary or Remedial Action, Petitioner served Requests for Admissions asking Respondent to admit that at the time he made each of the above statements, he knew them to be false or made them with reckless disregard for their truth or falsity, and that he had no facts to support any of the statements. Because Respondent failed to answer the requests, they were deemed admitted and, therefore, Respondent is charged with knowledge of the falsity of each statement, or reckless disregard as to the truth or falsity of each statement. *See* Md. Rule 16-756 (providing that discovery in attorney grievance cases is governed by Title 2, Chapter 400 of the Maryland Rules); Md. Rule 2-424(b) ("Each matter of which an admission is requested shall be deemed admitted unless . . . the party to

12

whom the request is directed serves a response . . . ."); *De La Paz*, 418 Md. at 542, 16 A.3d at 186 (noting that because the attorney "failed to file an answer to Bar Counsel's Petitions or respond to its Requests for Admissions of Facts and Genuineness of Documents; thus, the factual averments in those Petitions were deemed admitted, in accordance with Md. Rules 2-323(e), 2-613, and 16-754(c)"); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 39 n.11, 891 A.2d 1085, 1088 n.11 (2006) (noting that unanswered requests were deemed admitted under Rule 16-756 and 2-424(b)); *Murnan v. Hock, Inc.*, 274 Md. 528, 534, 335 A.2d 104 (1975) (holding that, unless other relief was sought, unanswered admissions were "conclusively binding").

We agree with the hearing judge's conclusion that each of Respondent's statements relate to the integrity and/or qualifications of the named individuals, and that Respondent made the statements knowing they were false or with reckless disregard as to their truth or falsity. At the outset, we reject the hearing judge's conclusion that Respondent's statement as to Governor O'Malley violates Rule 8.2(a), because Governor O'Malley, the chief executive of the State of Maryland, is not a "public legal officer" for the purposes of the Rule.[9] The five remaining statements, however, involve judges or public legal officers,

---

[9] *See* Comment [1] to MLRPC 8.2(a), providing that "[a]ssessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. . . ." The attorney general, prosecuting attorneys, and public defender play important roles in our judicial system. Accordingly, false statements by lawyers impugning the integrity and qualifications of those offices would weaken public confidence in our judicial system. By contrast, the governor, the chief executive officer of the State, does not function as a legal officer within the judiciary.

(continued...)

13

which fall under the purview of Rule 8.2(a). We shall hold that by making those five statements, with the knowledge that they were false or with reckless disregard for their truth or falsity, Respondent violated Rule 8.2(a), and further that Respondent's statements are not entitled to protection under the First Amendment.

Moreover, these statements are, generally, the kind of statements that Rule 8.2(a) is intended to prevent. Allegations of corruption tend to discredit the public's trust and confidence in the judiciary and judicial system. Our analysis of this case rests on Respondent's statements taken together as a whole. For the sake of clarity, we note that certain phrases, alone, may not necessarily rise to the level of an attack on a judicial officer or public legal officer sufficient to warrant action pursuant to Rule 8.2(a). For example, Respondent's use of the words "lawless" and "weak man," without further allegations or criticisms, in another circumstance might not constitute a violation of Rule 8.2(a). Here, nevertheless, where those phrases were used in conjunction with false factual allegations of corrupt activity, to include collusion with law enforcement and "arrang[ing] for deputy sheriffs . . . to illegally arrest [him]," Respondent is clearly in violation of Rule 8.2(a).

The Preamble to the Maryland Lawyers' Rules of Professional Conduct provides that "[6] . . . a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority." In other words,

---

(...continued)
Therefore, the governor is not a "public legal officer" under the purview of Rule 8.2(a).

14

"[m]embers of the legal profession have a responsibility to refrain from engaging in conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. DeMaio*, 379 Md. 571, 581, 842 A.2d 802, 808 (2004). Rule 8.2(a) furthers this principle by requiring lawyers to refrain from impugning the qualifications or fitness of judicial and public legal officers. As Comment [1] to MLRPC 8.2(a) clarifies, "[e]xpressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice."[10] *See also In re Simon*, 913 So. 2d 816, 824 (La. 2005) ("While a lawyer as a citizen has a right to criticize [judges, judicial officers or public legal officers] publicly, he [or she] should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system."). In other words, the purpose of Rule 8.2(a) is not to protect judges, judicial officers, or public legal officials from unkind or undeserved criticisms. Rather, Rule 8.2(a) protects the integrity of the judicial system, and the public's confidence therein, and it does so in a limited way. Statements in violation of Rule 8.2(a) must (1) be false, (2) impugn the integrity or qualifications of judges, judicial officers or public legal officers, and (3) be made by the attorney knowing them to be false or with reckless disregard for their

_____

[10] For additional commentary on Rule 8.2(a), *see* Melvin Hirshman, *Did I Mean to Say That?*, 42 Md. B.J. 69-70 (Sept./Oct. 2009) (discussing cases in Maryland and elsewhere involving violations of Rule 8.2(a), and concluding that "[t]hese cases demonstrate the need for an attorney to undergo a cooling off period and consultation with others before 'lashing out' at the judiciary. There is a limit to verbalizing one's inner thoughts. I'm sure many an attorney has been upset during a trial, a ruling, an opinion, etc. So, look before your leap!").

truth or falsity.

In *Attorney Grievance Comm'n v. Hermina*, 379 Md. 503, 842 A.2d 762 (2004), we found a violation of Rule 8.2(a) where the attorney made an accusation of an *ex parte* conference between opposing counsel and the trial judge with reckless disregard for its truth or falsity. We held that this conduct was "wholly improper" and that "[i]f there was a question in his mind about the conversation between [the trial judge] and [opposing counsel] . . . [the attorney] should have brought his client's concern to [the judge's] attention and made appropriate inquiry of her, not write a letter to counsel accusing him and the judge of having an inappropriate *ex parte* communication[.]" *Hermina*, 379 Md. at 520-21, 842 A.2d at 772. *See also Attorney Grievance Comm'n v. McLain*, 406 Md. 1, 16, 956 A.2d 135, 143 (2008) (finding a violation of Rule 8.2(a) where respondent used "misleading statements to support the assertion that [the trial judge] was motivated by personal bias [which] improperly called the judge's integrity into question.").

In *Attorney Grievance Comm'n v. DeMaio*, we found a violation of 8.2(a) where the attorney made several "false, spurious and inflammatory representations and allegations" in briefs and other court filings regarding the Chief Judge and Clerk of the Court of Special Appeals. 379 Md. at 585, 842 A.2d at 810. In particular, the respondent made claims that the Chief Judge and Clerk of the Court of Special Appeals had "collu[ded] . . . to remove briefs from the legal process" and that the judge was "engaged in a scheme of unjust enrichment." *DeMaio*, 379 Md. at 576, 842 A.2d at 805. In that case, much like in the instant case, the respondent refused to participate in the disciplinary process and the hearing

16

judge entered an order of default against him. *DeMaio*, 379 Md. at 573-74, 842 A.2d at 803.

After bar counsel filed its recommendation for sanction, the respondent filed a "response" to the recommendation for sanction, in which he criticized bar counsel's investigation and action against him. *DeMaio*, 379 Md. at 578, 842 A.2d at 806. Moreover, the respondent maintained his allegations against the Chief Judge and Clerk of the Court of Special Appeals and made no apparent attempts to investigate or substantiate his claims. We held that these statements were cause for disbarment, and "certainly is conduct that prejudices the administration of justice seriously and most directly." *DeMaio*, 379 Md. at 585, 842 A.2d at 810.

Although DeMaio did not contend that his statements were entitled to First Amendment protection, in that case we nevertheless discussed *In re Evans*, 801 F.2d 703 (4th Cir. 1986), in which the Fourth Circuit specifically rejected such a First Amendment argument. In that case, the United States District Court for the District of Maryland disbarred Evans from practicing law in that court for a violation of Rule 8.2(a) where Evans wrote a letter accusing a magistrate judge of incompetence and/or religious and racial bias. In rejecting Evans's argument that his speech was protected under the First Amendment, the Fourth Circuit, quoting a New York state appellate court, stated:

> Judicial officers, as we have said, are not immune from suit or criticism; but, like every one else, they are protected against scandalous charges. To make a public, false and malicious attack on a judicial officer is more than an offense against him individually; it is an offense against the dignity and integrity of the courts and of our judicial system. It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the

17

court. In this and in other jurisdictions, the rule is well settled that an attorney who engages in making false, scandalous or other improper attacks upon a judicial officer is subject to discipline.

*In re Evans*, 801 F.2d at 707 (quoting *In the Matter of Greenfield*, 24 A.D.2d 651, 652, 262 N.Y.S.2d 349, 350-51 (N.Y. App. Div. 1965)). The Fourth Circuit also cited several other jurisdictions that have reached a similar conclusion as to the limitations of First Amendment protection for speech by lawyers that is in contravention of rules of professional conduct and prejudicial to the administration of justice. *In re Evans*, 801 F.2d at 707-08 (citing *The People ex rel. The Chicago Bar Assn., Relator, v. Metzen*, 125 N.E. 734 (Ill. 1919); *Kentucky Bar Assn. v. Williams*, 682 S.W.2d 784 (Ky. 1984); *In re Rogers*, 212 P. 1034 (N.M. 1923); *In re Manheim*, 113 A.D. 136 (N.Y. App. Div. 1906)).

In recent years, additional state and federal courts have chimed in on these limitations. For example, the Supreme Court of Indiana, discussing whether the *New York Times*[11]

---

[11] *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (holding that to satisfy the protections of the First Amendment, a public official must prove that a defamatory statement was made with "actual malice" in order to recover damages). In defamation cases, we apply the *New York Times* subjective test to evaluate whether the defendant made the defamatory statements with "actual malice," which requires proof that the defendant made the statement knowing it to be false or with reckless disregard to its truth or falsity. *See Batson v. Shiflett*, 325 Md. 684, 728, 602 A.2d 1191, 1213-14 (1992). An attorney discipline case involving defamatory statements, however, is not the same as a defamation case. *See Standing Comm. v. Yagman*, 55 F.3d 1430, 1437 (9th Cir. 1995) ("[T]here are significant differences between the interests served by defamation law and those served by rules of professional ethics."). There appears to be disagreement among the states as to whether the general defamation standard announced in *New York Times*, *i.e.* the subjective test, should apply equally to attorney discipline cases. Most courts, however, have chosen to apply an objective standard to attorney conduct in Rule 8.2(a) violation cases. *See e.g. United States Dist. Ct. v. Sandlin*, 12 F.3d 861, 867 (9th Cir. 1993) (recognizing that "[w]hile the language of [Rule] 8.2(a) is consistent with the constitutional limitations placed

(continued...)

18

subjective test or an objective test would apply to Rule 8.2(a)[12] violations, recently stated:

> First, the limits on professional speech by attorneys are not coextensive with the limits of the First Amendment. . . . Second, attorneys are expected to exercise reasonable objectivity in their statements about judicial officers. We expect those who have been granted the special privilege of admission to the bar to bring reasonable objectivity to their statements about judicial officers; to rise above the raw emotions and accusations that impede rather than enhance the judicial process.

*In re Dixon*, 994 N.E.2d 1129, 1136 (Ind. 2013). *See also United States Dist. Ct. v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993) ("[O]nce a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct."); *Disciplinary Counsel v. Gardner*, 793 N.E.2d 425, 429 (Ohio 2003) ("The First Amendment does not shield an attorney from discipline for falsely suggesting 'unseemly complicity' by the judiciary in unlawful or unethical practices. Such false statements, whether by attorneys or others, enjoy no constitutional protection when they

---

(...continued)
on defamation actions by *New York Times*, because of the interest in protecting the public, the administration of justice, and the profession, a purely subjective standard is inappropriate. Thus, we determine what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances.") (citation and quotation omitted); *Yagman*, 55 F.3d at 1438 (following *Sandlin* and stating that "an objective malice standard strikes a constitutionally permissible balance between an attorney's right to criticize the judiciary and the public's interest in preserving confidence in the judicial system: Lawyers may freely voice criticisms supported by a reasonable factual basis even if they turn out to be mistaken."). Here, because Respondent, by default, is deemed to have admitted that the statements were false and that he had actual knowledge of their falsity, we need not and do not address the issue of whether a subjective or objective standard is appropriate in this context.

[12] Indiana Professional Conduct Rule 8.2(a) uses the same language as MLRPC 8.2(a), which both follow Rule 8.2(a) of the ABA Model Rules of Professional Conduct.

19

are made with knowledge of their falsity or reckless disregard for their truth.") (citations omitted); *Matter of Westfall*, 808 S.W.2d 829, 836 (Mo. 1991) ("As officers of the court, lawyers do not stand in the shoes of ordinary citizens. Lawyers must execute their professional responsibilities ethically and pursuant to rules, carefully considered, in order to ensure the confidence of both litigants and the public.") (citations omitted).

In a different context, we discussed limitations on lawyers' extrajudicial speech in *Attorney Grievance Comm'n v. Gansler*, 377 Md. 656, 835 A.2d 548 (2003). In that case, then State's Attorney for Montgomery County Douglas Gansler was charged with violating Rule 3.6, which prohibits lawyers from making certain extrajudicial statements that the lawyer knows or should know have a substantial likelihood of causing material prejudice to an adjudicative proceeding. We discussed the origins and purpose of Rule 3.6, which generally is to protect defendants' Sixth Amendment right to a fair trial. *Gansler*, 377 Md. at 674-77, 835 A.2d at 558-59. In addressing the applicability of the First Amendment to speech by attorneys in the context of Rule 3.6, we stated that "[i]n general, the First Amendment applies equally to an ordinary citizen and an attorney," but, when acting as an attorney, "[e]ven outside the courtroom, the speech of a lawyer may be curtailed to an extent greater than an ordinary citizen's." 377 Md. at 677, 835 A.2d at 560 (citation and quotation omitted).[13] Noting that "attorneys occupy a special role as participants in the criminal justice

---

[13] "This Court has long held lawyers to a higher standard of conduct than the average citizen." *Attorney Grievance Comm'n v. Sheinbein*, 372 Md. 224, 253, 812 A.2d 981, 998 (2002). *See also Bradley v. Fisher*, 80 U.S. 335, 355, 20 L. Ed. 646 (1871) ("[T]he obligation which attorneys impliedly assume, if they do not by express declaration take upon

(continued...)

20

system, and, as a result, the public may view their speech as authoritative and reliable[,]" we held that Gansler violated Rule 3.6 by making several statements to the press about certain defendants' confessions, plea bargains, and his opinion of their guilt, related to pending cases. *Gansler*, 377 Md. at 676, 835 A.2d at 569. Our analysis in *Gansler* is consistent with *DeMaio* and our analysis of Rule 8.2(a) today. Although Rule 8.2(a) limits attorney speech, it does so in a narrow context. The purpose of the Rule is to prevent damage to the integrity of the judicial system. False statements impugning the integrity of "judges, judicial officers, and public legal officials" undermines the integrity of the judiciary, and "prejudices the administration of justice seriously and most directly." *DeMaio*, 379 Md. at 585, 842 A.2d at 810. Accordingly, where Respondent made knowingly false statements alleging corrupt activity by several judges and public legal officers in relation to earlier criminal proceedings against him, such expression is not entitled to protection under the First Amendment and is plainly in violation of MLRPC Rule 8.2(a).[14]

---

[13](...continued)
themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts.").

[14] We note that there are qualified and absolute privileges that will apply to certain speech as a defense to defamation claims, and these privileges generally apply equally to statements made by lawyers. For example, in defamation cases, an attorney has an absolute privilege to make defamatory statements that are rationally related to a judicial proceeding. *See Norman v. Borison*, 418 Md. 630, 650, 17 A.3d 697, 709 (2011). We agree with several of our sister states, however, that there is no absolute privilege that would protect an attorney from disciplinary action. *See Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426,
(continued...)

21

**Sanction**

Our goal when imposing sanctions is to protect the public and the public's confidence in the legal profession, not to punish the erring attorney. *See Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 424-25, 969 A.2d 1010, 1023 (2009); *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 30, 922 A.2d 554, 571 (2007); *Attorney Grievance Comm'n v. Rees*, 396 Md. 248, 254, 913 A.2d 68, 72 (2006). Sanctions protect the public when they deter future offending conduct and remove "those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Attorney Grievance Comm'n v. Gore*, 380 Md. 455, 471-72, 845 A.2d 1204, 1213 (2004). When sanctions are imposed, they should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537, 819 A.2d 372, 375 (2003).

In *DeMaio*, a case substantially similar to the case at bar, we held that disbarment was the appropriate sanction, stating that:

> Making accusations in petitions to this Court seeking their removal, impugning the integrity of the Chief Judge of the Court of Special Appeals and the Clerk of that court, without justification or even an attempt at justification beyond conjecture and speculation, and repeating those accusations during the

---

(...continued)
438 (N.J. 2006); *Krouse v. Bower*, 20 P.3d 895, 901 n.1 (Utah 2001); *Kirschstein v. Haynes*, 788 P.2d 941, 950 (Okla. 1990); *Selby v. Burgess,*712 S.W.2d 898, 900 (Ark. 1986). Absolute privilege is a broad defense to tort claims, including tort claims related to statements made in connection to pending AGC actions, *see Mixter v. Farmer*, 215 Md. App. 536, 81 A.3d 631(2013); however, we confirm that it is not a defense to claims of unprofessional conduct.

22

disciplinary hearing, again without attempt at justification, are themselves, as they would be with respect to any judge or clerk, cause for disbarment.

*DeMaio*, 379 Md. at 585, 842 A.2d at 810.  Additionally, DeMaio failed to demonstrate any investigation or factual basis for his allegations, and maintained his allegations throughout the disciplinary proceedings against him.  Quoting *In re Evans*, we stated that:

> [A]ppellant's failure to investigate, coupled with his unrelenting reassertion of the charges . . . convincingly demonstrates his lack of integrity and fitness to practice law.  A person guilty of such practices is . . . dangerous in any walk of life and is especially so when he occupies the responsible position of an attorney upon whose good faith, truthfulness, sense of propriety and ethical standards both courts and litigants are entitled to rely.

*DeMaio*, 379 Md. at 584, 842 A.2d at 809-10 (quoting *In re Evans,* 801 F.2d at 706).  We also noted that, in addition to making false statements about the integrity and qualifications of judicial officers, the attorney's response to the disciplinary proceedings "raise[d] other questions with respect to the respondent's fitness to continue in the practice of law." *DeMaio*, 379 Md. at 585, 842 A.2d at 810.

In the present matter, we have concluded that Respondent violated Rules 8.1(b), 8.2(a), 8.4(a), (c) and (d).  In addition, Respondent has repeatedly refused to offer any justification for his conduct, which, like in *DeMaio*, raises a question as to his fitness to continue in the practice of law.  Respondent made numerous unsubstantiated allegations against judges and public legal officers, which he then disseminated without explanation to members of the Bar.  Despite repeated requests to explain these allegations, as well as requests to explain why he disseminated them to various members of the Bar, Respondent has at all times ignored these requests or refused to offer any rational reason for his criticisms

23

or the dissemination of those criticisms.  Respondent has also presented no evidence that he has made any investigation into the truthfulness of his claims.  In addition to his outright failure to respond or participate meaningfully in the instant proceedings, Respondent's inflammatory letter to Bar Counsel, stating, for example, "you should be ashamed of yourself," and insinuating that Bar Counsel would not respond "truthfully" to his communications, as well as his "motion to dismiss" referring to the instant action as an "unjustified, unjustifiable, and downright ridiculous attorney disciplinary case," all reflect Respondent's lack of fitness to continue in the practice of law.  Considering all of the foregoing, we agree with Petitioner that the appropriate sanction is disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JAMES ALBERT FROST.**

IN THE COURT OF APPEALS OF

MARYLAND

_____

Misc. Docket AG No. 69

September Term, 2012

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JAMES ALBERT FROST

_____


Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

    JJ.


_____


Concurring Opinion by Adkins, J.


_____


Filed:  February 26, 2014

The Majority opinion is well-researched and well-stated. Respectfully, I write this concurring opinion to articulate a constraint on our disciplinary authority that the Majority does not express. In my view, there are boundaries on our authority to discipline an attorney for false statements or reckless statements under Maryland Lawyers' Rules of Professional Conduct 8.2(a) that are dependent on the context of the false or reckless statement that is made. Judge McDonald ventures that "few lawyers – or judges – have not, at some time, uttered an unkind and undeserved criticism of a judge, an Attorney General, a State's Attorney, or a Public Defender." McDonald, J., Concurring and Dissenting Slip Op. at 4. I agree, and add that, in frustration, disappointment, or anger at an adverse ruling, it is altogether human to do so—even if the statement is false, or made with reckless disregard for its truth. Such statements should not be the subject of professional discipline, provided they are made to family members, within the confines of one's own law firm, or to other close associates whom the speaker knows to be like-minded. Were we to discipline lawyers for such statements, we and the Attorney Grievance Commission would be treading on the constitutional protection for freedom of speech so cherished by our citizens.

As Judge McDonald points out, the First Amendment is not confined to, or even primarily directed at, discussions among like-minded people. I limit my comment to this context only to give reassurance to practicing lawyers that I, at least, would not agree to our being "word police" of their day-to-day conversations about judges.

But, here, the statements made by Respondent were not so confined. As the Majority says, the statements in question were intentionally mailed by Respondent to

lawyers who were not part of a judicial or other disciplinary body, and with whom he had absolutely no relationship and no reason to correspond, except to make the admittedly false and defamatory statements. I do not share Judge McDonald's view that we should restrain from imposing discipline based upon a respondent's deemed admissions. In this context, I agree that the discipline imposed by the Majority opinion is fully justified.

Circuit Court for Anne Arundel County
Case No. 02-C-12-174606
Argued: January 13, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 69

September Term, 2012
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JAMES ALBERT FROST
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Concurring and Dissenting Opinion
by McDonald, J.
_____

Filed: February 26, 2014

Although the Majority opinion is well thought out and carefully written, I cannot join it. Our primary purpose in attorney discipline is to protect the public from inept or errant lawyers, not to protect public officials from criticism, even if unjustified. I would suspend Mr. Frost for his failure to respond adequately to Bar Counsel's inquiry, but am not comfortable disbarring on this limited record for what appears to be largely an expression of opinion, misguided though that opinion may be.

Under the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(b), an attorney should respond to a lawful inquiry from Bar Counsel, even if, in the attorney's view, the underlying complaint is frivolous or any resulting disciplinary action would ultimately prove untenable. Mr. Frost's failure to respond substantively to Bar Counsel's inquiry thus violated MLRPC 8.1(b).[1] An appropriate sanction would be an indefinite suspension with a special condition of readmission that he cooperate with Bar Counsel's inquiry. In addition, the record of this matter documents erratic behavior by Mr. Frost that raises reasonable questions about his judgment and competence (in the broadest sense). Given our responsibility to the public with respect to those we license to serve it as attorneys, I would also condition Mr. Frost's readmission on the results of an appropriate medical evaluation. *See* Maryland Rule 16-760(h)(1).

MLRPC 8.2(a) incorporates in the disciplinary rules a restriction on attorney speech outside the courtroom or a legal proceeding. The alleged violation of MLRPC 8.2(a) in this

---

[1] These facts would also support a determination that Mr. Frost violated MLRPC 8.4(a) (violation of the MLRPC) and 8.4(d) (conduct prejudicial to the administration of justice).

case is based on the content of an e-mail that Mr. Frost sent to his ex-wife and then inexplicably shared with three other lawyers. MLRPC 8.2(a) prohibits a lawyer from making a statement concerning the qualifications or integrity of a judge (or other legal officer) only if the lawyer makes the statement with knowledge that it is false or with "reckless disregard" as to its truth. The Restatement of the Law Governing Lawyers reiterates that standard and elaborates its rationale:

> Lawyers are specially situated to assess the official performance of judges and other judicial and legal officers. Accordingly, both constitutional law and sound social policy require that lawyers have broad latitude in criticizing such officers. Under the rule of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny, judges and other public legal officers are "public officials," so that an action by a judge or public legal officer against a lawyer for damages for defamation would require a showing of actual malice. Similar considerations should also lead to application of the standard in *New York Times v. Sullivan* in lawyer-discipline cases.

Restatement (Third) of the Law Governing Lawyers §114, comment b (2000 & 2013 Supp.).

The Majority opinion finds that the "knowing or reckless" element is satisfied in this case as a result of Mr. Frost's failure to participate in the proceedings below and to respond to requests for admissions. In other words, he is deemed to have admitted the intent element of the violation, which, in the view of the Majority opinion, relieves us of the need to consider the actual content and circumstances of his e-mail, or the standard by which the statements in question should be judged. Majority slip op. at pp. 13, 18-19 n.11.

Requests for admissions are typically used to obtain agreement as to the genuineness

2

of documents, the establishment of other foundational facts necessary for the admission of evidence, or the truth of uncontested facts, thereby streamlining the adjudication of a matter. *See, e.g.*, P. Niemeyer & L. Schuett, Maryland Rules Commentary 336 (3d ed. 2004) ("Requests for admissions of fact serve a limited but useful function.... The purpose of the rule is ... to eliminate from trial those matters over which the parties truly have no dispute"). While I do not fault Bar Counsel, or any other litigant, for seeking to have an opposing party concede the entire case through this discovery device, requests for admission that concern the ultimate issue in a case are generally not that useful and thus are not enforced.[2] *Id*. And when a request on an ultimate issue is "deemed" admitted, it may be more accurately characterized as a default than a finding or holding on the particular issue. Thus, the deemed violation of MLRPC 8.2(a) is largely an echo of the violation of MLRPC 8.1(b) – the failure to respond adequately to Bar Counsel's inquiry or to participate in the proceedings below. Perhaps the peculiar facts of this case – or the unusual way in which the ultimate issue has been determined – limit the significance of the Court's holding. On the other hand, it may

---

[2]In the instant case, the Request for Admission of Facts and Genuineness of Documents largely concerned the genuineness of numerous items of correspondence involving Mr. Frost, as well as basic facts concerning his legal career and the content of statements he made. However, it also asked him to admit that he made various statements "knowing that the statement was false" and, with respect to the same statements, "with reckless disregard as to its truth or falsity." Among the other facts deemed admitted was that Mr. Frost is "unable to render adequate legal service by reason of mental or physical illness or infirmity, or addiction to or dependence upon an intoxicant or drug." This last deemed admission concerning mental capacity conceivably raises a question about the two deemed admissions concerning the intent element.

3

establish an unfortunate precedent.

I suspect that few lawyers – or judges – have not, at some time, uttered an unkind and undeserved criticism of a judge, an Attorney General, a State's Attorney, or a Public Defender. No doubt there have been occasions where an attorney, in the aftermath of an adverse ruling, has commented on the parentage of the judge in a way that, even without the benefit of a "deemed admission," is obviously and literally false, but is essentially a statement of opinion rather than fact. Perhaps such remarks are usually made to those who share the sentiment and, unlike the instant case, do not generate a complaint. But whether there is a violation of MLRPC 8.2(a) should not depend on the sympathies or sensitivities of the listener.[3] In the end, the rule is aimed at intentional factual misstatements, not rude opinions.[4]

The summary of case law in the Majority opinion is certainly accurate. I add four observations.

---

[3]In her concurring opinion, Judge Adkins sensibly attempts to limit the reach of the Majority opinion, suggesting a sort of "friends and family" exception to its holding based on the First Amendment. The Restatement of the Law Governing Lawyers adopts a similar approach in limiting the restriction on attorney speech about judges to statements made "publicly" – a qualification not included in MLRPC 8.2(a). *See* Restatement §114. In any event, the authors of the Restatement – as well as the drafters of the model for MLRPC 8.2(a) – intended that the *New York Times* standard be satisfied. And the First Amendment is not confined to discussions among like-minded people, but rather designed to encourage and protect public discourse. *See, e.g.*, *Whitney v. California*, 274 U.S. 357, 376 (1927) (Brandeis, J., concurring); *Snyder v. Phelps*, 131 S.Ct. 1207, 1215-17 (2011).

[4]This was certainly the intent of the drafters of the model rule that became MLRPC 8.2(a). *See* American Bar Association, Model Rules of Professional Conduct, Proposed Final Draft (May 30, 1981) at 207 ("Rule 8.2 applies to a statement of fact.").

First, as the authors of the Restatement noted, civil liability for criticism of a public official is limited to false statements made with actual malice – *i.e.*, knowledge of falsity or reckless disregard of falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). In the context of critical remarks about judges, the Supreme Court has stated that "only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (reversing conviction of district attorney who stated that "vacation-minded" judges sympathetic to racketeering interests were responsible for court backlog and impeding vice investigations).

Second, the drafters of MLRPC 8.2(a) intended to incorporate the standards articulated in *Garrison* and *New York Times* in that rule. *See* American Bar Association, Model Rules of Professional Conduct, Proposed Final Draft (May 30, 1981) at 206 ("Rule 8.2 is consistent with that limitation [in *New York Times* and *Garrison*]"); M. Tarkington, *The Truth be Damned: The First Amendment, Attorney Speech, and Judicial Reputation*, 97 Geo. L.J. 1567, 1587 & n. 123 (2009). (As the Majority opinion recounts, some courts have instead chosen not to apply the *New York Times* standard in favor of a less demanding, "objective" standard. Majority slip op. at p.19 n.11).

Third, the decisions of this Court under MLRPC 8.2(a) that are relied upon by the Majority opinion all involved statements alleging specific acts of misconduct rather than a general negative characterization of the officials. *See Attorney Grievance Comm'n v.*

5

*McClain,* 406 Md. 1, 956 A.2d 135 (2008) (in appeal to circuit court, attorney alleged that District Court judge had admitted personal bias against him and purported to "document" that allegation with false statements about the content of the record); *Attorney Grievance Comm'n v. DeMaio*, 379 Md. 571, 842 A.2d 802 (2004) (attorney alleged, without factual basis, that judge had *ex parte* contact with opposing party, had possibly received a "monetary benefit" from that party, and had colluded to remove briefs from public record); *Attorney Grievance Comm'n v. Hermina*, 379 Md. 503, 842 A.2d 762 (2004) (attorney accused judge of holding *ex parte* jury instruction conference with opposing counsel in violation of the Code of Judicial Conduct). In this case, only the statements concerning Judge Harrington – *i.e.*, that she allegedly arranged for deputy sheriffs to "illegally" arrest Mr. Frost – appear to go beyond derogatory adjectives.

Finally, discipline imposed by the judiciary that may appear designed to shield judges from general statements of adverse opinions can itself undermine confidence in the judiciary. *See* J. Dodd, *The First Amendment and Attorney Discipline for Criticism of the Judiciary: Let the Lawyer Beware,* 15 N. Ky. L. Rev. 129, 144 (1988).

At this intersection of statements of fact and statements of opinion, of protected speech and public officials, it is best to proceed with caution. I would not impose discipline on the basis of a "deemed admission" of the critical intent element. Rather, we should hold the charges under MLRPC 8.2(a) and 8.4(c) in abeyance. If Mr. Frost were suspended on the basis of the other charged violations, and were later to satisfy the conditions for

6

readmission and cooperate with Bar Counsel's inquiry, I would remand the matter to the hearing judge for further consideration of the remaining charges. *See* Maryland Rule 16-759(c)(6). But I would not disbar under MLRPC 8.2(a) and 8.4(c) at this time on this record.